Rocky C. Tsai (SBN 221452)
*Rocky.Tsai@ropesgray.com*
Amy Jane Longo (SBN 198304)
*Amy.Longo@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, CA 94111-4006
Tel: (415) 315-6300
Fax: (415) 315-6350
Attorneys for Defendant *CAVA Group, Inc.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL HAMMAN and MICHAEL STEWART,<br><br>    Plaintiffs,<br><br>    v.<br><br>CAVA GROUP, INC.,<br><br>    Defendant. | Case No. 22cv0593-MMA-MSB<br><br>**DEFENDANT CAVA GROUP, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge: Hon. Michael M. Anello<br>Courtroom: 3C<br>Date: August 15, 2022<br>Time: 2:30 p.m.<br><br>**JURY TRIAL DEMANDED** |

# <u>TABLE OF CONTENTS</u>

I.    BACKGROUND .................................................................................3

    A.    Per- and Polyfluoroalkyl Substances ........................................3

    B.    Plaintiffs' Allegations..................................................................6

II.    LEGAL STANDARDS ......................................................................10

III.    ARGUMENT ......................................................................................11

    A.    Plaintiffs Fail to Plausibly Plead that They Suffered a Direct, Actual, and Particularized Injury, and Therefore Lack Standing .......11

    B.    Plaintiffs Do Not Plausibly Allege that the Products Contain Any Human-Toxic PFAS and Thus Fail to Plead Any Claims Upon Which Relief Can Be Granted..................................................15

    C.    Plaintiffs Fail to Plead Their Claims with Particularity.....................15

    D.    Plaintiffs' Claims Must Be Dismissed for Additional Independent Reasons.............................................................................19

    E.    The Court Should Dismiss or Strike Plaintiffs' Nationwide Class Allegations..............................................................................23

IV.    CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc. Device Performance Litig.*,
  347 F. Supp. 3d 434 (N.D. Cal. 2018)................................................................16

*In re Arris Cable Modem Consumer Litig.*,
  No. 17-CV-01834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .......................17

*ASARCO v. Kadish*,
  490 U.S. 605 (1989)...........................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................10

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .............................................................................22

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) .............................................................................20

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by*
  *Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) .................11

*Brazil v. Dole Packaged Foods, LLC*,
  No. 12-CV-01831, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ...................20

*Brown v. Madison Reed, Inc.*,
  No. 21-cv-01233, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021).....................17

*Carpenter v. PetSmart, Inc.*,
  441 F. Supp. 3d 1028 (S.D. Cal. 2020)..............................................................24

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ...........................................................................10

*Challenge Printing Co. v. Elecs. For Imaging Inc.*,
  500 F. Supp. 3d 952 (N.D. Cal. 2020)................................................................16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................................12

*Colgan v. Leatherman Tool Grp., Inc.*,
    38 Cal. Rptr. 3d 36 (Ct. App. 2006) ...............................................19, 20

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) .................................................................11

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)..................................................................................24

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ...................................................................10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...................................................................10

*Edmunson v. Proctor & Gamble Co.*,
    No. 10-CV-2256, 2011 WL 1897625 (S.D. Cal. May 17, 2011) .......................17

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ..................................................................22

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)..........................14

*Hughes v. Chattem, Inc.*,
    818 F. Supp. 2d 1112 (S.D. Ind. 2011)...............................................13

*In Re Hydroxycut Mktg. & Sales Pracs. Litig.*,
    Nos. 09MD2087, 09CV2492, 2010 WL 1838080 (S.D. Cal. May 5,
    2010) .........................................................................................................17

*In Re Hydroxycut Mktg. & Sales Pracs, Litig.*,
    Nos. 09md2087, 10cv670, 2011 WL 1002190 (S.D. Cal. Mar. 21,
    2011) ..................................................................................................17, 18

*Interstate Nat. Gas Co. v. S. Cal. Gas Co.*,
    209 F.2d 380 (9th Cir. 1953) ...................................................................11

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
    903 F.3d 278 (3rd Cir. 2018) ..............................................................14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...........................................................16

*Korolshteyn v. Costco Wholesale Corp.*,
    No. 15-cv-709, 2017 WL 1020391 (S.D. Cal. Mar. 16, 2017)...........20

*Ladore v. Sony Comput. Ent. Am., LLC*,
    75 F. Supp. 3d 1065 (N.D. Cal. 2014) ...............................................22

*Lee v. Am. Nat'l Ins.*,
    260 F.3d 997 (9th Cir. 2001) .............................................................12

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .............................................................11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................12

*Manzarek v. St. Paul Fire & Marine Ins.*,
    519 F.3d 1025 (9th Cir. 2008) ...........................................................11

*Marshall v. Gen. Motors/Corp. Serv. Co.*,
    No. 18-CV-2551, 2019 WL 2642661 (S.D. Cal. June 27, 2019) .......18

*Maxwell v. Unilever U.S., Inc.*,
    No. 12-cv-01736, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018).......16

*McBride v. Boughton*,
    20 Cal. Rptr. 3d 115 (Ct. App. 2004) ................................................21

*McGee v. S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) .............................................................14

*Mercado v. Audi of Am., LLC*,
    No. ED CV18-02388, 2019 WL 9051000 (C.D. Cal. Nov. 26, 2019) ............................................................................24

*Outdoor Media Grp., Inc. v. City of Beaumont*,
    702 F. Supp. 2d 1147 (C.D. Cal. 2010) .............................................10

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO: 22CV0593-MMA-MSB

iv

*Pirozzi v. Apple Inc.*,
 913 F. Supp. 2d 840 (N.D. Cal. 2012) ................................................18

*Rivera v. Invitation Homes, Inc.*,
 No. 18-CV-03158, 2019 WL 11863726 (N.D. Cal. June 19, 2019) .................25

*Robichaud v. Speedy PC Software*,
 No. C 12 04730, 2013 WL 818503 (N.D. Cal. Mar. 5, 2013)...........................16

*Sheahan v. State Farm Gen. Ins.*,
 442 F. Supp. 3d 1178 (N.D. Cal. 2020)............................................17

*Sierra Club v. Morton*,
 405 U.S. 727 (1972)..........................................................12

*Snyder v. TAMKO Bldg. Prods., Inc.*,
 No. 15-CV-01892, 2019 WL 4747950 (E.D. Cal. Sept. 30, 2019) ...................23

*Stewart v. Kodiak Cakes, LLC*,
 537 F. Supp. 3d 1103 (S.D. Cal. 2021)...................................23, 24, 25

*Swartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007) .................................................16

*Trazo v. Nestlé USA, Inc.*,
 113 F. Supp. 3d 1047 (N.D. Cal. 2015).........................................19

*Valley Forge Christian Coll. v. Ams. United for Separation of Church
 & State, Inc.*,
 454 U.S. 464 (1982)..........................................................13

*Whitmore v. Arkansas*,
 495 U.S. 149 (1990)..........................................................13

*Young v. Cree, Inc.*,
 No. 17-cv-06252, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) .....................22

**Statutes**

California Commercial Code § 2314 .............................................20

California's Consumers Legal Remedies Act.........................9, 16, 19, 20

California's False Advertising Law ................................................................9

California's Unfair Competition Law ..............................................9, 16, 19, 20

**Other Authorities**

California Civil Jury Instructions, No. 370 ....................................................21

Fed. R. Civ. P. 9(b) .................................................................15, 16, 18

Fed. R. Civ. P. 12(b)(1) .............................................................1, 10, 11

Fed. R. Civ. P. 12(b)(6) ...............................................................1, 10

Fed. R. Civ. P. 12(f) ........................................................................19

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CAVA GROUP, INC.'S MOTION TO DISMISS

Defendant CAVA Group, Inc. ("Defendant" or "CAVA") respectfully submits this brief in support of its motion for an order dismissing with prejudice the Complaint of Plaintiffs Neil Hamman and Michael Stewart (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of standing and failure to state a claim upon which relief may be granted.

Plaintiffs assert fourteen claims against CAVA, seeking to represent a class of consumers allegedly harmed by purchasing the company's grains and/or greens bowls. Yet Plaintiffs do not, and cannot, allege a single instance of actual harm from their eating a CAVA grains and/or greens meal. Plaintiffs come before the Court with what is essentially an untested medical *hypothesis*—unmoored to a single test or data point connected to their own experience—premised on their alleged anxiety about the sheer *possibility* of future physical injury. This is plainly insufficient to confer Article III standing. Because Plaintiffs have not pled a single instance where the CAVA grains and/or greens bowls they ate caused them any harm by being unsafe to eat, their related conjectural thesis—that the food they consumed was economically worthless simply because they posit that it *could* cause such harm someday—is even more attenuated and improper.

At bottom, this suit was prompted by, and relies solely on, the publication of an unsubstantiated, non-peer-reviewed third-party magazine article regarding an extremely wide class of chemicals (organic fluorine, essentially compounds with carbon atoms bonded to fluorine atoms), which even Plaintiffs concede are not equivalent to PFAS—itself an extremely wide and diverse family of over *10,000* different chemicals. Further, among thousands of members of the PFAS family, many have been approved by the FDA as safe specifically for use in human food

contact materials, while only a small subset have been the focus of concern due to their potential human toxicity.  Plaintiffs do not, because they cannot, allege that they were ever exposed to the actual subset of potentially harmful PFAS by eating grains and/or greens bowls they bought from CAVA.  Even if the Court were to make the speculative assumption (erroneously invited by the Complaint) that the presence of carbon-fluorine bonds invariably equates to the presence of unspecified PFAS, the undeniable reality is that the alleged speculative presence of PFAS is equally consistent—indeed, more consistent—with the presence of *harmless* PFAS as with harmful PFAS, which requires dismissal of Plaintiffs' Complaint under *Twombly/Iqbal*.

In sum, to credit Plaintiffs' allegations as plausible, the Court would have to make multiple, speculative, fill-in-the-gap leaps.  It would not only have to (1) assume that organic fluorine invariably equates to PFAS (it does not), but also that (2) any PFAS invariably equates to human-toxic PFAS (false too).  Still further, the Court would have to assume that (3) quick contact with a paper bowl invariably results in *migration* of chemicals into the grains and/or greens in that bowl.  Moreover, the Court would then have to assume that (4) any (purely assumed) human-toxic PFAS that made its way into the grains and/or greens when ingested invariably equates to a risk of tangible and harmful exposure that (5) could ultimately be differentiated from the many other and more likely sources of environmental exposure that Plaintiffs may have had to PFAS.  Likely because of the impossibility of plausibly alleging this attenuated chain of causation, Plaintiffs do not actually allege that they consumed a single bite of grains and/or greens contaminated with human-toxic PFAS as a result of buying a grains and/or greens bowl at a CAVA restaurant.  In the end, Plaintiffs are unable to take the step of asserting that the grains and/or greens bowls they bought from CAVA caused them any medically

1  demonstrated diminution in health, or specifying what content was supposedly
2  contrary to the truth in any CAVA statement they actually saw and relied upon in
3  deciding to buy a grains and/or greens bowl at a CAVA restaurant, or ultimately that
4  the grains and/or greens bowls did not provide value to them as food they actually
5  consumed.  Simply leading with the conclusion that the food they consumed was
6  "worthless" as a result of their own mismatched and untested speculations does not
7  constitute an actionable claim.

## I.   BACKGROUND

9       CAVA is a Washington D.C.-based company that owns and operates
10 Mediterranean "fast casual" restaurants.  At CAVA restaurants, patrons build their
11 own customized grains and/or greens bowls in a real-time, assembly-line process
12 where they select from a wide variety of food items and toppings.  Once built, the
13 bowls are generally consumed by the patrons shortly thereafter.  CAVA's grains
14 and/or greens bowls are the specific products with which Plaintiffs take issue.  *See*
15 Compl. ¶ 1 (defining the "Products" as CAVA's "grain and salad bowls"); *id.* n.1
16 (defining "Product" to "denote both the Product and [its] packaging").

### A.   Per- and Polyfluoroalkyl Substances

18 Per- and Polyfluoroalkyl Substances ("PFAS") are an extremely broad group
19 of over 10,000 different chemicals that are used frequently in industrial, commercial,
20 and consumer products because of their useful properties, including fat, oil, and

water resistance.  *See* Compl. ¶¶ 2, 52; Ex. 1[1] at 2-3; Ex. 2[2] at 2; Ex. 3[3] at 1.  Despite the common use of PFAS, only 30 of the multiple thousands of members of the PFAS chemical family are individually identifiable through reliable testing.  *See* Ex. 1 at 5; Ex. 4[4] at 4.  A number of PFAS chemicals have been authorized by the United States Food and Drug Administration (the "FDA") for decades as safe for use specifically in human food contact applications.  *See* Ex. 5[5] at 2.  In contrast, two members of the numerous PFAS family in particular, Perfluoroctanoic Acid and Perfluoroctane Sulfonate ("PFOA" and PFOS," respectively), have been the main focus of regulation based on potential human toxicity.  *See* Ex. 4 at 1.

Scientific research regarding PFAS is nascent, in stark contrast to Plaintiffs' repeated (demonstrably untrue) pronouncements that all 10,000+ members of the PFAS family of chemicals are known to cause harmful health effects, *see*, *e.g.*, Compl. ¶ 2 ("PFAS are a group of synthetic chemicals known to be harmful . . . ."). No less than the United States Environmental Protection Agency (the "EPA") makes clear that "[s]cientific studies have shown that exposure to *some* PFAS in the

---

[1] A copy of the Consumer Reports article on which Plaintiffs rely as the sole basis for their factual allegations against CAVA is attached to the Declaration of Rocky C. Tsai In Support of Defendant CAVA Group, Inc.'s Request for Judicial Notice (the "Declaration") as Exhibit 1.  As set forth in CAVA's Request for Judicial Notice ("RJN"), filed concurrently herewith, the Court may consider this document under the incorporation by reference doctrine.  *See* RJN 3-4.

[2] A copy of the United States Environmental Protection Agency's (the "EPA") statement "PFAS Explained" is attached to the Declaration as Exhibit 2.  The Court may consider this document under the incorporation by reference doctrine.  *See* RJN 3-4.

[3] A copy of the EPA's CompTox Chemical Dashboard page, "PFAS structures in DSSTox (update August 2021)," which lists 10,776 PFAS chemical structures, is attached to the Declaration as Exhibit 3.  The Court may take judicial notice of this document.  *See* RJN 4.

[4] A copy of the EPA's statement "Our Current Understanding of the Human Health and Environmental Risks of PFAS" is attached to the Declaration as Exhibit 4.  The Court may take judicial notice of this document.  *See* RJN 4.

[5] A copy of the United States Food and Drug Administration (the "FDA") statements "Per- and Polyfluoroalkyl Substances" is attached to the Declaration as Exhibit 5. The Court may take judicial notice of this document.  *See* RJN 4.

environment *may* be linked to harmful health effects in humans," but the existence of "thousands of PFAS chemicals . . . make[] it challenging to study and assess the potential human health and environmental risks." Ex. 2 at 2 (emphasis added). Accordingly, the EPA advises that while "research is still ongoing," any "health effects associated with exposure to PFAS are difficult to specify for many reasons," including that "[t]here are *thousands of PFAS with potentially varying effects and toxicity levels*," "most studies focus on a *limited number* of better known PFAS compounds," and "[t]he types and uses of PFAS change over time, which make it challenging to track and assess how exposure to these chemicals occurs and how they will affect human health." Ex. 4 at 3-4 (emphasis added).

The scientific studies and regulatory authorities that Plaintiffs cite throughout the Complaint acknowledge these realities. *See* Compl. ¶¶ 2-4, 31-52 (cited sources therein). Contradicting Plaintiffs' erroneous blanket assertion that *all* PFAS are *known* to be harmful, Plaintiffs' sources merely posit that a select subset of chemicals within the extensive and diverse PFAS family may, in certain circumstances, be of potential concern. *See*, *e.g.*, Ex. 1 at 10 (noting the FDA's preference for regulating PFAS on an individual basis because "concerns about one specific PFAS might *not* be 'indicative of concerns for *all* chemicals classified as PFAS'") (emphasis added); Ex. 2 at 2 (noting that "[s]cientific studies have shown that exposure to *some* PFAS in the environment may be linked to harmful health effects in humans") (emphasis added).

One non-specific method for testing the *potential* presence of a member of the PFAS chemical family in a product is to measure the broader level of total organic fluorine content in that product, as PFAS is but one (out of a large number) of

possible sources of organic fluorine[6]. The Complaint relies on one such proxy test reported by a third party (Consumer Reports) to construct a hypothesis about the possible presence of unidentified PFAS in CAVA's grains and/or greens bowls. *See Compl.* ¶¶ 4, 31-34. But, as the Complaint and the sole basis upon which it relies (the Consumer Reports reported test results) both have no choice but to concede, there are "other sources" of organic fluorine that are *not* PFAS, meaning that the presence of organic fluorine in a product by definition does not equate to the presence of PFAS in that product. Compl. ¶ 34; Ex. 1 at 5. The Consumer Reports article thus acknowledges that the total organic fluorine testing that the Complaint specifically relies upon measures the presence of organic fluorine merely as an over-inclusive proxy for the possible (but not plausible) presence of PFAS and certainly does not measure any specific instance of human-toxic PFAS whatsoever. *See id.* ¶ 34; Ex. 1 at 5.

### B.   Plaintiffs' Allegations

Plaintiffs Hamman and Stewart are two individual consumers who allege they purchased CAVA bowls "at numerous points over the past few years" from CAVA restaurants in La Jolla, California and San Diego, California, respectively.

Culled of the Complaint's conjecture, erroneous conflations, and conclusory assertions, Plaintiffs allege that the Products are falsely advertised because the non-peer-reviewed third-party article reported that unverified testing detected that CAVA bowls contain an extremely broad family of organic fluorine compounds. Running with this unsubstantiated data point, Plaintiffs claim that the presence of organic fluorine suggests the possibility that the bowls (the Complaint does not go

---

[6] Fluorine is one of Earth's basic and most abundant chemical elements, which in its elemental form is a gas that combines with many other elements to form an extremely broad class of so-called "fluorinated" chemicals. Organic fluorine compounds, in turn, are chemicals in which fluorine and carbon have combined.

so far as to allege anything about the grains and/or greens that Plaintiffs personally ate) <u>may</u> contain certain unidentified members of another extremely broad and numerous family of chemicals: PFAS—a subset of which are potentially harmful to humans, and other subsets of which are approved by the FDA for food contact or are otherwise not a focus of regulatory concern. *See* Compl. ¶ 4 ("Despite Defendant's representations to consumers that its products are 'healthy,' and 'sustainable,' including on its website and in-store signage, independent research conducted by Consumer Reports determined that the Products packaging contains **508.3 parts per million (ppm) of total organic fluorine**, which is an *indicator* that the Product contains PFAS[.]") (second emphasis added) (footnote omitted).

Plaintiffs' Complaint, however, is most notable for what it does not plead. The Complaint does *not* allege that the Products Plaintiffs purchased actually contained PFAS. It does not allege that any (conjectural) PFAS actually migrated into the contents of the grains and/or greens that Plaintiffs consumed. It does not allege that the Plaintiffs' eating of CAVA grains and/or greens bowls caused a single instance or even indicia of physical harm, or was not flavorful, filling, nutritious, and so forth. In fact, nowhere in the entirety of the Complaint do Plaintiffs actually claim that they were *exposed* to any identified and potentially harmful species of the PFAS chemical family by eating human-toxic PFAS-contaminated grains and/or greens temporarily held in a human-toxic PFAS-adulterated bowl.

Compounding these pleading insufficiencies, Plaintiffs' factual allegations rest on demonstrably false premises that conflict with their own cited and incorporated sources. <u>First</u>, Plaintiffs allege that the presence of fluorine in the Products necessarily equates to the presence of PFAS (a non-equivalent and also extremely broad class of chemicals) in the Products. *Compare* Compl. ¶ 5 ("[N]either before nor at the time of purchase does Defendant notify consumers like

Plaintiffs that their Products . . . contain[] heightened levels of fluorine indicating the presence of PFAS") and ¶ 64 ("Defendant's conduct here was, and continues to be, fraudulent because they omitted and concealed that the Product contains substances—fluorine and PFAS . . . ."). Yet, as Plaintiffs' own sources note, the presence of a measure of total organic fluorine—essentially, chemicals with fluorine atoms connected to carbon atoms—merely *suggests* that further investigation may be warranted to see whether *unspecified* PFAS *may* be present. *See, e.g.*, Exs. 1 at 5; 2 at 2; 5 at 1-2; *see also* Ex. 6[7] at 6 ("There are several *non-specific* methods to determine the total fluorine in samples. . . . As fluorine may be present in other fluorinated compounds or as inorganic fluorine, it is necessary to determine PFAS" separately.) (emphasis added). <u>Second</u>, Plaintiffs allege that all members of the 10,000+-member PFAS chemical family are known to be harmful, *see, e.g.*, Compl. ¶ 46 ("[I]t is beyond dispute that PFAS are harmful to the human body."), even though only a certain specific subset of compounds within the extensive PFAS group may, under certain circumstances, pose risk to humans—and indeed, certain members of the same PFAS family have been specifically approved by the FDA as safe for contact with food. *See* Ex. 5 at 2 ("The FDA has authorized specific PFAS for use in specific food contact applications," including in the manufacturing of "cookware" and "food packaging."); *id.* at 1-2 (explaining that while "[e]xposure to some types of PFAS" are associated with health effects, "even when there have been detectable levels of PFAS [in the general food supply], our safety assessments have shown no cause for avoiding these foods"); Ex. 4 at 3 ("Current scientific research suggests that exposure to high levels of *certain* PFAS may lead to adverse health

---

[7] A copy of the "Presence of Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS) in Food Contact Materials (FCM) and Its Migration to Food," a peer-reviewed, publicly available scientific journal article upon which the Consumer Reports article relies, is attached to the Declaration as Exhibit 6. The Court may take judicial notice of this document. *See* RJN 5.

outcomes.") (emphasis added); Ex. 1 at 10 ("The [FDA] favors regulating [PFAS] individually, it told [Consumer Reports], because concerns about one specific PFAS might not be 'indicative of concerns for all chemicals classified as PFAS.'"). Finally, Plaintiffs suggest—erroneously—that the presence of PFAS in packaging necessarily results in the migration of PFAS into the food the packaging (however temporarily) holds, *see* Compl. ¶ 55, even though the reality is that such "leaching" is neither inevitable nor invariable. *See* Ex. 6 at 6 (describing 2011 study where no PFAS was detected in popcorn that had been microwaved at high heat in a PFAS-treated popcorn bag); *id.* at 13-14 (noting that, while treating food contact materials with PFAS can lead to migration of PFAS into food, this "[m]igration depends on several factors," including the food's fat, salt, or moisture content, pH levels, and temperature, as well as the amount of time the food is in contact with the food contact materials).

At bottom, this suit is constructed solely on the publication of an unsubstantiated and non-peer-reviewed third-party magazine article regarding a wide class of chemicals that are *not* equivalent to PFAS (much less human-toxic, as opposed to FDA-approved or other PFAS). Plaintiffs seek to leverage this third-party report to bring fourteen causes of action against CAVA on behalf of themselves, a nationwide class, and a California sub-class. Plaintiffs allege, in Counts I, II, and IV, respectively, claims under California's Unfair Competition Law (the "UCL"), California's Consumers Legal Remedies Act (the "CLRA"), and California's False Advertising Law (the "FLA"); in Counts III and XIII, respectively, breaches of implied and express warranties; in Counts V through XI, various fraud-based claims; in Count XII, unjust enrichment; and in Count XIV, negligent failure to warn. Because neither Plaintiffs' standing, nor any of their claims, is adequately pled, the Complaint should be dismissed in its entirety.

## II.   <u>LEGAL STANDARDS</u>

"Because standing is a threshold inquiry, the Court addresses standing concerns first" under Federal Rule of Civil Procedure 12(b)(1) "and then proceeds, if necessary, to address the merits" under Federal Rule of Civil Procedure 12(b)(6). *Outdoor Media Grp., Inc. v. City of Beaumont*, 702 F. Supp. 2d 1147, 1153 (C.D. Cal. 2010). Thus, only if the Court concludes that the Plaintiffs have standing should it consider, as grounds for dismissal, failure to state a claim or to plead fraud with particularity. To allege standing, Plaintiffs "bear[] the burden of demonstrating that [their] injury-in-fact is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (internal quotations and citation omitted).

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[P]laintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 557). "When faced with two possible explanations, only one of which can be true and only one of which results in liability, [P]laintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Rather, "[s]omething more is needed, such

as facts tending to exclude the possibility that the alternative explanation is true." *Id.*

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), the Court "may consider materials incorporated into the complaint or matters of public record," *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Moreover, the Court may consider materials that are properly judicially noticeable, and documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In considering these materials, the Court need not accept as true "facts" alleged in the Complaint "which are revealed to be unfounded by documents included in the pleadings or introduced in support of the motion." *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 384 (9th Cir. 1953); *see also Manzarek v. St. Paul Fire & Marine Ins.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (The Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint.").

## III.   <u>ARGUMENT</u>

### A.   **Plaintiffs Fail to Plausibly Plead that They Suffered a Direct, Actual, and Particularized Injury, and Therefore Lack Standing.**

Each of Plaintiffs' claims must be dismissed based on Plaintiffs' failure to sufficiently plead Article III standing. <u>First</u>, the Complaint ultimately contains no factual allegations that Plaintiffs themselves were exposed to—much less harmed by—any actual human-toxic member of the PFAS chemical family. Specifically, Plaintiffs do not, likely because they cannot consistent with Rule 11 (much less *Twombly/Iqbal*), allege that the actual grains and/or greens bowl containers they

1    bought at a CAVA restaurant contained a human-toxic PFAS compound (as opposed

2    to, say, one of the many PFAS chemicals approved by the FDA as safe for food

3    contact).  Nor do they allege that a species of human-toxic PFAS compound actually

4    migrated in any amount from the disposable meal bowls they bought to the grains

5    and/or greens they ate; or that they were exposed to any human-toxic PFAS-

6    contaminated food in a duration and manner that caused them any actual, much less

7    plausible, harm.  Simply put, Plaintiffs' speculative health concerns, and even more

8    attenuated contentions of economic worthlessness premised on their conjectural

9    medical hypotheses, based on a single third-party publication reporting the detection

10   of certain chemicals that are *not* PFAS (much less human-toxic PFAS), do not come

11   close to meeting federal pleading standards for alleging particularized injury, and

12   are thus insufficient to confer Article III standing.  *See Lujan v. Defenders of*

13   *Wildlife*, 504 U.S. 555, 560 n.1 (1992) (explaining that a particularized injury "must

14   affect the plaintiff in a personal and individual way"); *Sierra Club v. Morton*, 405

15   U.S. 727, 734–35 (1972) (standing "requires that the party seeking review be himself

16   among the injured"); *Lee v. Am. Nat'l Ins.*, 260 F.3d 997, 1001–02 (9th Cir. 2001)

17   (consumer lacked Article III standing where he failed to show "that he ha[d] actually

18   been injured by the defendant's challenged conduct," even though he was authorized

19   to maintain suit in state court under the California Unfair Business Practices Act as

20   a private attorney general).

21       <u>Second</u>, Plaintiffs fail to plead an actual or imminent physical or economic

22   injury.  Plaintiffs do not, because they cannot, allege a single instance of actual

23   physical harm from eating a CAVA grains and/or greens bowl.  Plaintiffs thus resort

24   to coming before the Court with a pure hypothesis—unmoored to even a single test

25   or data point arising from their personal physical condition—premised on alleged

26   fear about the sheer *possibility* of future physical injury, which is plainly insufficient

27

28                                        MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
                                          CASE NO: 22CV0593-MMA-MSB

127701464_8

1    to confer Article III standing.  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

2    410 (2013) (plaintiffs lacked standing where their theory of harm rested "on their

3    highly speculative fear" of future injury, which "rel[ied] on a highly attenuated chain

4    of possibilities"); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("[W]e have said

5    many times before and reiterate today: Allegations of possible future injury do not

6    satisfy the requirements of Art. III.").  By extension, any allegation that Plaintiffs

7    suffered psychological harm premised on their conjectural worries about the possible

8    presence of unidentified PFAS that a third-party report may indicate (but also

9    plausibly may not indicate) is likewise insufficient.  *See ASARCO v. Kadish*, 490

10   U.S. 605, 616–17 (1989) ("claims of injury that are purely abstract" or that relate to

11   a "psychological" or "special interest do[] not alone confer federal standing"); *Valley*

12   *Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454

13   U.S. 464, 485 (1982) (a "psychological consequence presumably produced by

14   observation of conduct with which one disagrees . . . is not an injury sufficient to

15   confer standing"); *cf. Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1118 (S.D.

16   Ind. 2011) ("[A]pparent alarm after reading [a] Report . . . fall[s] short of establishing

17   a personal stake in this litigation.").

18          Plaintiffs similarly fail to plead a cognizable economic injury.  Plaintiffs

19   allege that they "reasonably relied" on "Defendant's claims[] that [the] Products

20   were safe for consumption" in deciding to purchase the Products and that "these

21   representations and warranties were part of the basis of the[ir] bargain." Compl. ¶¶

22   7, 9.  But Plaintiffs do not ultimately specify what content was actually contrary to

23   the truth in any CAVA statement they saw and personally relied upon in deciding to

24   buy a grains and/or greens bowl at a CAVA restaurant.  Since Plaintiffs do not

25   (because they cannot) claim that the meals they consumed from CAVA lacked

26   nutritious value or flavor, or that eating them caused them any documented physical

27

28

1    harm (much less economic harm predicated on any health effects) due to any specific

2    instance of human-toxic PFAS chemicals, their Complaint does not alter the reality

3    that Plaintiffs received the benefit for which they actually bargained.  *See McGee v.*

4    *S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("[Plaintiff's] assumptions were

5    not included in the bargain . . . . [E]ven if [her] expectations were not met, she has

6    not alleged that she was denied the benefit of her bargain.").

7         <u>Third</u>, buyers' remorse and a wish to regain what was paid for grains and/or

8    greens bowls that Plaintiffs have, as far as the Complaint discloses, already

9    consumed on multiple occasions without issue are not legally cognizable economic

10   injuries.  *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs.*

11   *& Liab. Litig.*, 903 F.3d 278, 281 (3rd Cir. 2018) ("[B]uyer's remorse, without more,

12   is not a cognizable injury under Article III.").  To support their unqualified demands

13   for "full refunds" and "restitution of all profits," Compl. ¶¶ 186, 140, Plaintiffs

14   simply recite the conclusion that they "would not have purchased" the Products

15   absent Defendant's alleged misrepresentations that the products were "safe for

16   consumption." *See, e.g.*, Compl. ¶¶ 99, 128, 194, 201, 207, 217.  But that conclusory

17   language is question-begging:  Plaintiffs have pled not a single instance showing

18   that the grains and/or greens they ate caused them any harm by being unsafe to eat,

19   making their conjectural thesis that the food they consumed was economically

20   worthless simply because they posit that it *could* cause such actual harm or physical

21   injury even more attenuated.  *See Herrington v. Johnson & Johnson Consumer Cos.*,

22   No. C 09-1597, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) ("Plaintiffs have

23   not plead facts to show that Defendants' products are defective or otherwise unfit

24   for use. . . . Accordingly, Plaintiffs . . . do not allege facts that tend to show . . . actual

25   economic damage.").

26

27

28                                                    MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
                                                      CASE NO: 22CV0593-MMA-MSB

**B.    Plaintiffs Do Not Plausibly Allege that the Products Contain Any Human-Toxic PFAS and Thus Fail to Plead Any Claims Upon Which Relief Can Be Granted.**

Each of Plaintiffs' claims relies upon the contention that the Products contain "508.3 parts per million (ppm) of total organic *fluorine*, which is an *indicator* that the Product contains "PFAS[.]"  Compl. ¶ 4 (emphasis added).  This "indicator" hypothesis, in turn, is based solely on the publication by a third party of a non-peer-reviewed Consumer Reports study that Plaintiffs do not purport to have vetted or independently substantiated.  The content and timing of the Complaint relative to the publishing of the third-party report makes clear that Plaintiffs did not conduct a reasonable investigation to even attempt to verify that the grains and/or greens bowls that they purchased from CAVA were the same as those tested by the third party.  Nor did Plaintiffs or the third party apparently take the step of trying to determine whether the presence of carbon-fluorine bonds in any bowl in turn led to the presence of any member of the PFAS family of chemicals (much less a single molecule of human-toxic PFAS) in any grains and/or greens eaten by Plaintiffs.

Even if the Court were to assume, for purposes of this motion, that the Products contained one or more chemicals within the expansive family of molecules comprising organic fluorine with a carbon-fluorine bond, Plaintiffs still fall far short of their pleading burden, since *content* does not equate to *exposure*.  The reality remains that Plaintiffs do not plausibly plead that the Products were adulterated with any PFAS toxic to humans that created a risk of physical harm via exposure to the grains and/or greens temporarily held in the bowls.

Plaintiffs ask the Court to assume too much, and certainly more than is permitted under *Twombly/Iqbal*.

**C.    Plaintiffs Fail to Plead Their Claims with Particularity.**

Federal Rule of Civil Procedure 9(b) requires that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  As the Ninth Circuit explained in *Vess v. Ciba-Geigy Corp. USA*, "[i]t is established law . . . that Rule 9(b)'s particularity requirement applies to state-law causes of action" pled in federal court. 317 F.3d 1097, 1103–04 (9th Cir. 2003), *superseded by statute on other grounds*.  When a state-law claim "is said to be 'grounded in fraud' or to 'sound in fraud,' . . . the pleading of the claim as a whole must satisfy the particularity requirement of Rule 9(b)."  *Id.*  As all of Plaintiffs' claims rely on the same alleged course of fraudulent conduct, they must all be pled with the requisite particularity. *See In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 443 (N.D. Cal. 2018) (dismissing plaintiffs' claims under the California UCL, CLRA, and FAL for failure to satisfy Rule 9(b)) (citing cases); *Robichaud v. Speedy PC Software*, No. C 12 04730, 2013 WL 818503, at *10 (N.D. Cal. Mar. 5, 2013) (applying Rule 9(b) to UCL, fraudulent inducement, breach of express warranty, breach of contract, and breach of the implied covenant of good faith and fair dealing claims); *Challenge Printing Co. v. Elecs. For Imaging Inc.*, 500 F. Supp. 3d 952, 958 (N.D. Cal. 2020) (applying Rule 9(b) to a claim for negligent misrepresentation).

To be sufficiently particular, Plaintiffs' allegations must contain "an account of the time, place, and specific content of the false representations," *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007), and must be accompanied by the "who, what, when, where, and how" of the misconduct charged, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." *Maxwell v. Unilever U.S., Inc.*, No. 12-cv-01736, 2018 WL 1536761, at *2 (N.D. Cal. Mar. 29, 2018) (internal quotations omitted).

Plaintiffs fail to plead with particularity all but the "who" of the alleged misconduct.  In highly general terms, Plaintiffs recite that they reviewed unspecified "marketing materials and in-store signage related to [its] Products," at an unidentified location; through an undisclosed medium; and at an unspecified time "[p]rior to [their] purchase," which Plaintiffs suggest may have been "at numerous points over the past few years, including as recently as" January or March 2022, for Plaintiffs Hamman and Stewart, respectively.  Compl. ¶¶ 7, 9.  The absence of these details is dispositive.  *See Edmunson v. Proctor & Gamble Co.*, No. 10-CV-2256, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011) ("The complaint contains general allegations about [d]efendant's products and advertising scheme, but almost no allegations specific to [p]laintiff. The complaint alleges only that [p]laintiff saw [d]efendant's advertising claims at some point during the class period (which spans more than five years)."); *In Re Hydroxycut Mktg. & Sales Pracs, Litig.*, Nos. 09md2087, 10cv670, 2011 WL 1002190, at * 5 (S.D. Cal. Mar. 21, 2011) ("Although [p]laintiff describes certain marketing and promotional materials that she claims were misleading, [p]laintiff fails to specify which materials she actually saw and relied on in making her decision to purchase the products."); *In Re Hydroxycut Mktg. & Sales Pracs. Litig.*, Nos. 09MD2087, 09CV2492, 2010 WL 1838080, at *2 (S.D. Cal. May 5, 2010) ("Plaintiff's contention that he was 'exposed' to these fraudulent statements and omissions sometime 'prior to May 2009' is insufficient to state  'when' the fraud occurred with the requisite particularity."); *Brown v. Madison Reed, Inc.*, No. 21-cv-01233, 2021 WL 3861457, at *1 (N.D. Cal. Aug. 30, 2021) (dismissing fraud-based claims where plaintiffs generally alleged that they relied on misrepresentations on defendant's website and packaging stating that the product was "free of ammonia," "resorcinol," and "PPD,"

but "fail[ed] to specifically allege which, if any, of those statements they actually saw and relied upon before deciding to purchase the [defendant's] products").[8]

Moreover, as to the claims that require scienter (Counts V-VII, IX, and X), Plaintiffs fail to plead that CAVA knew or was deliberately reckless with respect to its allegedly misleading representations.  Instead, Plaintiffs weakly recite generic labels, alleging the pure conclusions that CAVA "would have had knowledge," Compl. ¶ 53, "[had] knowledge," *id.* ¶ 62, and, again, "would have had actual knowledge for years that the Products['] packaging contains harmful chemicals such as fluorine and PFAS," *id.* ¶ 70.  Asserting ultimate legal conclusions is insufficient as a matter of law to plead scienter.  *See, e.g.*, *Marshall v. Gen. Motors/Corp. Serv. Co.*, No. 18-CV-2551, 2019 WL 2642661, at *6 (S.D. Cal. June 27, 2019) (dismissing fraud claim where "[p]laintiff d[id] not provide specific allegations as to [defendant's] scienter [or] intent to defraud" and pleaded these "mandatory elements . . . only at the grossest levels of generality"); *Hydroxycut*, 2011 WL 1002190, at *5 ("Plaintiff's fraud claim . . . fails to state facts sufficient to support an inference of scienter with respect to [the defendant].").  Indeed, Plaintiffs' conclusory allegations that Defendant "would have had knowledge" conflict with Plaintiffs' own cited sources regarding the multiple thousands-member PFAS

---

[8] *See also Sheahan v. State Farm Gen. Ins.*, 442 F. Supp. 3d 1178, 1186 (N.D. Cal. 2020) (dismissing fraud-based claims due to lack of "allegation that [p]laintiffs read the statement on [defendant's] website . . . that amounts to an affirmative misrepresentation"); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) ("[A] plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon."); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) ("While [p]laintiff identifies a number of representations . . . she fails to provide the particulars of her own experience reviewing or relying upon any of those statements.  Nowhere in the [complaint] does [p]laintiff specify when she was exposed to the statements or which ones she found material to her decisions to purchase.").

chemical family. *See, e.g.*, Ex. 1 at 5 ("PFAS is used so widely—found in ink on food containers, recycled paper, machines that make packaging, and more—that it often shows up in products unintentionally."); *see also id.* at 10 ("Manufacturers could unknowingly still be using . . . compounds" that "are no longer manufactured in the U.S.," or "they could be using materials produced overseas.").[9]

### D. Plaintiffs' Claims Must Be Dismissed for Additional Independent Reasons.

In addition to the reasons set forth above, several of Plaintiffs' claims also individually fail to state claims upon which relief can be granted.

Plaintiffs' claims under the UCL (Count I), CLRA (Count II) and FAL (Count IV) should be dismissed, or, in the alternative, the relief requested therein should be stricken per Federal Rule of Civil Procedure 12(f), because Plaintiffs' demands for "full refunds" are not cognizable under these consumer protection laws. "The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received, not the full purchase price or all profits." *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1052 (N.D. Cal. 2015) (internal quotations omitted). "[G]o[ing] beyond" this amount "would result in a windfall to plaintiff[s]." *Id.* (internal quotations omitted); *see also Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr.

---

[9] Plaintiffs' sole factual allegation regarding scienter relates to information that, by its terms, *post-dates* Plaintiffs' last alleged purchase of the Products. Citing the Consumer Reports article, Plaintiffs contend (again confusingly conflating fluorine, organic fluorine, and PFAS all in one) that "numerous of Defendant's competitors' products have been tested by researchers and found to contain no levels of organic fluorine. Accordingly, Defendant would have had knowledge that it could produce the Product packaging without the heightened levels of fluorine and PFAS inherent in its current composition." Compl. ¶ 53. But the Consumer Report article on which this allegation is based was published on March 24, 2022, after the most recent date alleged in the Complaint when either Plaintiff allegedly purchased the Products.

3d 36, 63 (Ct. App. 2006).  Similarly, the CLRA defines actual damages as "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction." *Id.* at 43. "The term 'actual value' . . . means market value." *Id.*   Courts have repeatedly rejected demands for full refunds under the UCL, FAL, and CLRA in the class action context.  *Cf. Korolshteyn v. Costco Wholesale Corp.*, No. 15-cv-709, 2017 WL 1020391, at *7 (S.D. Cal. Mar. 16, 2017) ("[I]t strains credulity to argue that no consumers would have purchased them if not for the allegedly false statement . . . because if nothing else, they provide calories, hydration or good taste to the consumer."); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831, 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014) (noting that a "full refund" is "deficient because it is based on the assumption that consumers receive no benefit whatsoever . . . . This cannot be the case, as consumers received benefits in the form of calories, nutrition, vitamins, and minerals.").  On its face, the Complaint therefore seeks relief beyond what the UCL, FAL, and CLRA authorize.

Plaintiffs' implied warranty claim (Count III) fails because Plaintiffs do not plausibly plead that the Products are unfit for their ordinary use: namely, to hold CAVA grains and/or greens bowls from the time of purchase until the consumer completes his or her meal.  The implied warranty of merchantability requires that goods are "fit for the ordinary purposes for which such goods are used."  Cal. Com. Code § 2314.  It "provides for a minimum level of quality," and a breach occurs only if the Products lack "even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (internal quotations omitted).  The ordinary use of the Products is to temporarily hold grains and/or greens for a person to eat.  Plaintiffs do not allege that the Products failed in that use.  Importantly, Plaintiffs also never actually alleging that a single molecule of a

1   compound containing a carbon-fluorine bond (an organic fluorine), much less one
2   of the many thousands of types of molecules in the "PFAS" family of chemicals,
3   much less an actual instance of PFAS specifically shown to be toxic to humans,
4   actually migrated to any of the grains and/or greens contained in any of the bowls
5   bought by Plaintiffs so as to pose any plausible risk or diminution in value.
6   Plaintiffs' chain of speculations do not plead a plausible claim that the Products they
7   purchased were not "fit for their ordinary use" when there is nothing in the
8   Complaint showing other than Plaintiffs used the bowls as temporary food
9   containers to consume grains and/or greens without incident or injury.[10]

10       Plaintiffs' money had and received and unjust enrichment claims (Counts VIII
11   and XII) are entirely duplicative of their consumer protection, fraud, and warranty
12   claims and should therefore be dismissed.  As "[a] common count," a claim of money
13   had and received is "not a specific cause of action[;] rather, it is a simplified form of
14   pleading normally used to aver the existence of various forms of monetary
15   indebtedness."   Judicial Council of California Civil Jury Instructions, No. 370.
16   Common Count: Money Had and Received (2022 ed.) (citing *McBride v. Boughton*,
17   20 Cal. Rptr. 3d 115, 127 (Ct. App. 2004)).  "When a common count is used as an
18   alternative way of seeking the same recovery demanded in a specific cause of action,
19   and is based on the same facts, the common count is [dismissable] if the cause of
20   action is [dismissable]."  *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 127 (Ct. App.
21   2004) (dismissing money had and received claim and unjust enrichment claim).
22
23
────────────────────
24   [10] Plaintiffs also contend that they "purchased the Products in reliance upon
     Defendant's skill and judgment in properly packaging and labeling the Product,"
25   Compl. ¶ 124, and "would not have purchased the Products if they knew the truth
     about the Products, namely, that they were unfit for use and posed a significant safety
26   risk," Compl. ¶ 128.  But Plaintiffs breach of the implied warranty for a particular
     purpose claim ultimately fails to plead any "particular purpose" and instead doubles
27   down on their flawed ordinary use allegations.  *See* Compl. ¶¶ 119–28.

28                                MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
                                 CASE NO: 22CV0593-MMA-MSB

127701464_8

1  Thus, Plaintiffs' claim for money had or received must fall with their other causes
2  of action.

3      Plaintiffs' unjust enrichment claim is similarly unavailing, even when
4  accommodatingly "construed" by courts "as a quasi-contract claim seeking
5  restitution." *Compare Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th
6  Cir. 2015) (internal quotations omitted) (noting that, "in California, there is not a
7  standalone cause of action for 'unjust enrichment'"); *ESG Cap. Partners, LP v.*
8  *Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("While California case law appears
9  unsettled on the availability of such a cause of action, this Circuit has construed the
10  common law to allow an unjust enrichment cause of action through quasi-
11  contract."). "To allege unjust enrichment as an independent cause of action, a
12  plaintiff must show that the defendant received and unjustly retained a benefit at the
13  plaintiff's expense." *ESG Cap. Partners*, 828 F.3d at 1038. But Plaintiffs fail to
14  allege that CAVA engaged in any misconduct requiring restitution. Notably,
15  Plaintiffs are unable to take the step (consistent with Rule 11, much less
16  *Twombly/Iqbal*) of asserting that the grains and/or greens bowls they bought from
17  CAVA in fact caused them any medically demonstrated diminution in health, or that
18  the grains and/or greens bowls did not provide value to them as food they actually
19  consumed. Simply labeling food they consumed as "worthless" does not constitute
20  an actionable claim that CAVA was unjustly enriched or that Plaintiffs are entitled
21  to their money back.

22      Plaintiffs' tort-based claims asserting negligence (Counts XI and XIV) are
23  barred by the economic loss doctrine. Plaintiffs notably fail to allege that they
24  suffered *any* physical or other non-economic harm as a result of buying and
25  consuming grains and/or greens bowls from CAVA. "[N]on-economic loss is a
26  required element of a negligence cause of action alleged in a sale of goods case, and
27
28                          MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
                                     CASE NO: 22CV0593-MMA-MSB

127701464_8

thus non-economic loss must be pleaded to survive a motion to dismiss." *Ladore v. Sony Comput. Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1075–76 (N.D. Cal. 2014) (dismissing negligent misrepresentation claim in consumer class action where plaintiffs did not allege physical harm); *see also Young v. Cree, Inc.*, No. 17-cv-06252, 2018 WL 1710181, at *8 (N.D. Cal. Apr. 9, 2018) (same); *Snyder v. TAMKO Bldg. Prods., Inc.*, No. 15-CV-01892, 2019 WL 4747950, at *9 (E.D. Cal. Sept. 30, 2019) (economic loss rule bars claim for negligent failure to warn).  Plaintiffs also do not plead any plausible non-hypothetical future injury.  Accordingly, these claims fail.

Plaintiffs' negligent failure to warn claim (Count XIV) also fails because, stripped of conclusory allegations, Plaintiffs do not plausibly allege an actionable safety risk or any duty to disclose.  The Complaint does not identify any applicable standard that requires food establishments to disclose every ingredient of their food containers, nor does it identify any standard requiring restaurants to warn of the presence of any molecule containing a carbon-fluorine bond in a paper bowl.

### E.    The Court Should Dismiss or Strike Plaintiffs' Nationwide Class Allegations.

In the alternative, Defendant requests the Court dismiss or strike Plaintiffs' nationwide class allegations because Plaintiffs lack standing to assert claims on behalf of non-California residents under the laws of other states.  No amount of artful pleading or discovery will change this reality, and therefore these allegations should be rejected with prejudice.  *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103 (S.D. Cal. 2021) (Judge Anello) (dismissing nationwide class allegations for lack of standing).

In *Stewart*, this Court "agree[d] with the growing trend that courts can 'address the issue of Article III standing at the pleading stage and dismiss claims

asserted under the laws of states in which no plaintiff resides or has purchased products.'" *Id.* at 1124 (quoting *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d. 1058, 1072, 1072 n.3 (citing cases and finding that there is a "growing trend" among California district courts to address standing at the pleadings stage and dismiss claims "under the laws of states in which no plaintiff resides or has purchased products")). Indeed, as this Court stressed in *Stewart*, "[t]he fact that this action is a putative class action does not excuse [p]laintiffs' obligation to show standing for each claim asserted." *Id.* at 1125. Thus, where "a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim." *Id.* at 1124 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation marks and citation omitted) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.")); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.").

Neither Plaintiff Hamman nor Plaintiff Stewart "allege[] a connection" to every jurisdiction in the United States "where they do not reside or have not purchased [d]efendant's products." *Stewart*, 537 F. Supp. at 1125. Rather, Plaintiffs allege they reside and made their alleged purchases of the Products in California. *See* Compl. ¶¶ 7, 9. Accordingly, on the face of the Complaint, Plaintiffs lack standing to bring claims on behalf of a nationwide class. *See Stewart*, 537 F. Supp. at 1125 (dismissing nationwide class claims where the "forty claims from jurisdictions without a named [p]laintiff [was] vast when compared to the mere eleven claims from jurisdictions with a named [p]laintiff"); *see also Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1038 (S.D. Cal. 2020) (noting that courts

within the Ninth Circuit "routinely dismiss claims for lack of subject-matter jurisdiction where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce because the named plaintiff lacks standing to invoke the foreign statute"); *Mercado v. Audi of Am., LLC*, No. ED CV18-02388, 2019 WL 9051000, at *15 (C.D. Cal. Nov. 26, 2019) (citing cases); *Rivera v. Invitation Homes, Inc.*, No. 18-CV-03158, 2019 WL 11863726, at *4 (N.D. Cal. June 19, 2019) (citing cases).

Notably, in deciding *Stewart*, this Court emphasized that "[e]ven if the Court found that it had discretion to defer the standing issue until after class certification, the Court would decline to exercise its discretion" because "[it] ha[d] reservations about subjecting [d]efendant to the expense and burden of nationwide discovery without [p]laintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws." *Stewart*, 537 F. Supp. at 1125 (quotation marks and citations omitted). This Court should again avoid placing the undue burden on Defendant of unnecessary and burdensome discovery, stretched across the nation, when such discovery is plainly disproportionate to the actual standing of the Plaintiffs as pled in the Complaint.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendant CAVA respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety with prejudice, and in the alternative, dismiss or strike Plaintiffs' nationwide class allegations.

1  Dated: July 14, 2022                    **ROPES & GRAY LLP**

2

3

4                                 By:   */s/Rocky C. Tsai*

5                                       Rocky C.Tsai (SBN 221452)
                                        Amy Jane Longo (SBN 198304)
6                                       ROPES & GRAY LLP
                                        Three Embarcadero Center
7                                       San Francisco, CA 94111-4006
                                        Tel: (415) 315-6300
8                                       Fax: (415) 315-6350
                                        rocky.tsai@ropesgray.com
9                                       amy.longo@ropesgray.com
10
                                        *Attorneys for CAVA Group, Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28