**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        slitteral@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice* forthcoming)
Alec M. Leslie (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: jarisohn@bursor.com
        aleslie@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

NEIL HAMMAN and MICHAEL STEWART, individually and on behalf of all others similarly situated,

                                    Plaintiffs,

        vs.

CAVA GROUP, INC.,

                                    Defendant.

Case No. 22-cv-0593-MMA-MSB

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Judge:  Hon. Michael M. Anello
No Hearing Per Chambers Rules

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ......................................................................... 1

II.  ARGUMENTS ........................................................................... 5

    A.  Plaintiffs Have Article III Standing ................................... 5

        1.  Plaintiffs Establish Economic Injury-In-Fact ............................ 5

        2.  Plaintiffs Need Not Test Products (But They Have) ................... 9

            a.  Plaintiffs Pinpoint Nine Separate Test Results Validly Demonstrating PFAS .............................. 9

            b.  PFAS Migrate From Food Packaging to Food ................. 13

        3.  PFAS Share Similarities Rendering Them Material ................. 13

        4.  Plaintiffs Need Not Allege A Threshold .................................... 14

        5.  Plaintiffs' Allegations Align With Ninth Circuit Precedent .......................................................................... 15

    B.  Plaintiffs Have Standing For Injunctive Relief ..................... 15

    C.  Reasonable, Health-Conscious Consumers Are Deceived .................. 17

    D.  Plaintiffs' Allegations Satisfy The Heightened Pleading Standard ............................................................................. 20

        1.  The Pleading Standard Is Relaxed For Fraudulent Omission ............................................................................ 20

        2.  Plaintiffs Allege the Who, What, When, Where, and How ...................................................................................... 21

        3.  Reliance Is Inferred Based On Materiality ................................ 23

    E.  Plaintiffs Plead Claims For Fraudulent Omission ................. 24

III.  CONCLUSION .......................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Akridge v. Whole Foods Mkt. Grp., Inc.*,
2022 WL 955945 (S.D.N.Y. Mar. 30, 2022) ........................................... 10

*Allen v. Similasan Corp.*,
2013 WL 2120825 (S.D. Cal. May 14, 2013) ......................................... 19

*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. 2020) ................................................. 24

*Andrews v. Procter & Gamble Co.*,
2019 WL 6520045 (C.D. Cal. June 3, 2019) .......................................... 12

*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983).............................................................. 4

*Barnes v. Unilever United States Inc.*,
2022 WL 2915629 (N.D. Ill. July 24, 2022)........................................... 11

*Barton v. Pret A Manger (USA) Limited*,
535 F. Supp. 3d 225 (S.D.N.Y. 2021) ................................................... 11

*Berke v. Whole Foods Mkt., Inc.*,
2020 WL 5802370 (C.D. Cal. Sept. 18, 2020)................................... 8, 10

*Boysen v. Walgreen Co.*,
2012 WL 2953069 (N.D. Cal. July 19, 2012).......................................... 14

*Branca v. Nordstrom, Inc.*,
2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) ......................................... 12

*Casella v. Webb*,
883 F.2d 805 (9th Cir. 1989)............................................................... 19

*Chavez v. Blue Sky Nat. Beverages Co.*,
340 F. App'x 359 (9th Cir. 2009) ......................................................... 19

*City of Pomona v. SMQ N. Am. Corp.*,
750 F.3d 1036 (9th Cir. 2014).............................................................. 5

*Coffelt v. Kroger Co.*,
  2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) ............................................8, 19, 25

*Colbath v. Merck & Co.*,
  2022 WL 935195 (S.D. Cal. Mar. 29, 2022).........................................................20

*Cross v. HFLP-Dolphin Beach, LLC*,
  2017 WL 2794339 (S.D. Cal. June 28, 2017).........................................................6

*Davidson v. Apple, Inc.*,
  2018 WL 2325426 (N.D. Cal. May 8, 2018) ..........................................................2

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir, 2018)...............................................................................16

*Ehrlich v. BMW of N. Am., LLC*,
  801 F. Supp. 2d 908 (C.D. Cal. 2010).................................................................24

*Engalla v. Permanente Med. Grp., Inc.*,
  15 Cal.4th 951 (1997)..........................................................................................23

*Fine v. ConAgra Foods, Inc.*,
  2010 WL 11595914 (C.D. Cal. June 29, 2010) ....................................................11

*Friedman v. AARP, Inc.*,
  855 F.3d 1047 (9th Cir. 2017)..............................................................................23

*Fulfillium v. ReShape Med. LLC*,
  2019 WL 4570037 (C.D. Cal. Aug. 21, 2019)........................................................5

*Hall v. Marriott Int'l, Inc.*,
  2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) ......................................................16

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018)..................................................................................3

*Herrington v. Johnson & Johnson Consumer Cos.*,
  2010 WL 3448531 ...............................................................................................14

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013)................................................................................7

*Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*,
  425 U.S. 738 (1976) .......................................................................................12, 14

*Hough v. Big Heart Pet Brands, Inc.*,
   2020 WL 7227198 (N.D. Cal. Dec. 8, 2020) ......................................................2, 10

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ...............................................................15

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011) ...............................................................14

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*,
   903 F.3d 278 (3d Cr. 2018) ................................................................................6

*In re Juul Labs, Inc., Antitrust Litig.*,
   555 F. Supp. 3d. 932 (N.D. Cal. 2021) ...............................................................3

*In Re Metformin Mktg. & Sales Pracs. Litig.*,
   2022 WL 970281 (D.N.J. Mar. 30, 2022) .........................................................10

*Kanan v. Thinx Inc.*,
   2021 WL 4464200 (C.D. Cal. June 23, 2021) .......................................6, 12, 22, 23

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ..............................................................................3

*Kimca v. Sprout Foods, Inc.*,
   2022 WL 1213488 (D.N.J. Apr. 25, 2022) ..................................................11, 14

*Koronthaly v. L'Oreal USA*,
   2008 WL 2938045 (D.N.J. July 2009) ...............................................................15

*Lujan v. Defs' of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................10

*Maddern v. Austin*,
   2022 WL 206806 (S.D. Cal. Jan. 24, 2022) .......................................................25

*Mancuso v. RFA Brands, LLC*,
   454 F. Supp. 3d 197 (W.D.N.Y. 2020) ...............................................................11

*Marshall v. Gen. Motors / Corp. Serv. Co.*,
   2019 WL 2642661 (S.D. Cal. June 27, 2019) ....................................................22

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .............................................................................8

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................. 7

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) ............................................................ 7, 15

*Meaunrit v. Pinnacle Grp., LLC*,
   2010 WL 1838715 (N.D. Cal. May 5, 2010) ......................................... 9

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
   2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ...................................... 16

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) .............................................................. 22

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ............................................................ 23

*Morgan v. Wallaby Yogurt Co., Inc.*,
   2014 WL 1017879 (N.D. Cal. Mar. 13, 2014) ...................................... 5

*Oxina v. Lands' End, Inc.*,
   2015 WL 4272058 (S.D. Cal. June 19, 2015) ..................................... 23

*Renfro v. Champion Petfoods USA, Inc.*,
   25 F.4th 1293 (10th Cir. 2022) ........................................................... 10

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
   2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) .................................... 10

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987) .............................................................. 4

*Roper v. Big Heart Pet Brands, Inc.*,
   510 F. Supp. 3d 903 (E.D. Cal. 2020) ................................................ 16

*Safransky v. Fossil Grp., Inc.*,
   2018 WL 1726620 (S.D. Cal. Apr. 9, 2018) .............................. 12, 13, 14

*Schloegel v. Edgewell Personal Care Co.*,
   2022 WL 808694 (W.D. Mo. 16, 2022) .............................................. 10

*Schwartz v. Bai Brands, LLC*,
   2020 WL 5875019 (C.D. Cal. July 31, 2020) ..................................... 17

*Sharpe v. GT's Living Foods, LLC*,
   2021 WL 1035119 (C.D. Cal. Feb. 1, 2021).............................................................17

*Souter v. Edgewell Pers. Care Co.*,
   2022 WL 485000 (S.D. Cal. Feb. 16, 2022) .............................................................7

*Special Situation Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
   243 F. Supp. 3d 1109 (E.D. Cal. 2017)....................................................................2

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011).................................................................................3

*Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*,
   2018 WL 3222610 (S.D. Cal. June 19, 2018).....................................................20, 24

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021) ...........................................................passim

*Tran v. Sioux Honey Ass'n, Coop.*,
   471 F. Supp. 3d 1019 (C.D. Cal. 2020)...................................................................17

*United States v. Mariner Health Care, Inc.*,
   2021 WL 4259907 (N.D. Cal. Aug. 5, 2021)............................................................3

*United States v. Martinez*,
   967 F.2d 1343 (9th Cir. 1992).................................................................................6

*Vega v. Jones Day, Reavis & Pogue*,
   121 Cal. App. 4th 282 (2004)................................................................................24

*Vitiosus v. Alani Nutrition, LLC*,
   2022 WL 2441303 (S.D. Cal. July 5, 2022).............................................................16

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008)................................................................................19

*Williams v. Progressive Cnty. Mut. Ins. Co.*,
   2020 WL 7078888 (S.D. Cal. Dec. 3, 2020)............................................................16

*Wright v. Old Gringo Inc.*,
   2018 WL 6788215 (S.D. Cal. Dec. 26, 2018).......................................................3, 6

*Zeiger v. WellPet*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ...........................................................6, 8, 25

*Zeiger v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021) ....................................................... 24

*Zemola v. Carrington Tea Co., LLC*,
   2017 WL 4922974 (S.D. Cal. Oct. 30, 2017) ........................................... 7

**RULES**

Fed. R. Civ. P. 8 ................................................................................................ 20

Fed. R. Civ. P. 9 .......................................................................................... passim

## I.   INTRODUCTION

Defendant "targets health-conscious consumers" and "emphasizes . . . transparency, simplicity, and purity."  FAC, ¶ 43.  Plaintiffs allege that they "saw and relied on Defendant's marketing, including its in-store signage and website material outlined above in making their purchases."  *Id.*, ¶ 44.  Plaintiffs set forth this material, including the specific in-store signage, menus, and website representations that were material to their purchases.  *Id.*, ¶¶ 34-38.  Plaintiffs allege that in light of that information, they "believed that Defendant genuinely prioritized health, sustainability, and transparency, and did not expect that Defendant, who proudly touted these qualities, to hide the biggest secret of all: the existence of organic fluorine which is indicative of cancer causing PFAS in its packaging[.]"  *Id.*, ¶ 44.[1]

Defendant argues in its "Background" Section that exposure to PFAS can have varying effects on human health to varying degrees.  *See* MTD at 2-7.  Though, Defendant does not grapple with Plaintiffs' core contention.  Namely, that reasonable, health-conscious consumers who shop at restaurants marketed as health-conscious do not expect *any* level of PFAS in their food contact surface, and certainly not more than was found to be at certain fast-food restaurants.  *See* FAC, ¶¶ 49, 53.  In that same section, Defendant also appears content on leading this Court to believe that testing for organic fluorine is not a valid method of testing for PFAS.  *See* MTD at 5.  But that notion is belied by an entire section in Plaintiffs' FAC, called "Organic Fluorine Testing Represents A Scientifically Valid Method of Testing For PFAS."  *See* FAC, ¶¶ 62-68.  There, Plaintiffs quote industry experts and trade organizations, professors, and Judge Epstein, all of whom confirm that anything above 100 parts per million ("ppm") of organic fluorine indicates intentional use of PFAS.  *See id.*, ¶¶ 62-68.

Indeed, Plaintiffs allege that before this lawsuit was filed, even Defendant acknowledged that 100ppm threshold as indicating intentional use.  *See id.*, ¶¶ 50-52.

---

[1] Plaintiffs do not oppose dismissal of their claims regarding biocides.

For example, shortly after receiving notice of Toxic Free Future's test results, which found that Defendant's Products tested at 660ppm and 945ppm of organic fluorine, Defendant came out the next day with the following statement: "we are actively working to ensure our sustainable packaging continues to be responsibly sourced, compostable, functional, <u>and now PFAS free</u>." *Id.*, ¶ 50.  That is, "[i]mplicit in Defendant's response is its acknowledgement that testing for organic fluorine is a valid method to test for PFAS.  After all, even Defendant equated Mind the Store and Toxic-Free Future's findings of organic fluorine with a finding of PFAS." *Id.*, ¶ 52.

Recognizing that, Defendant attempts to shoehorn the organic fluorine, indicative of PFAS, in its Products as those *potentially* "approved by the FDA for food contact." MTD at 6.  But Defendant does not argue preemption nor that the PFAS in Defendant's Products are food contact substances nor that such substances were actually approved by the FDA.  Instead, Defendant argues that the source of the organic fluorine may be from something unrelated to intentional use.  But at this stage in the proceeding, Defendant's undeveloped alternative explanations—even if possible—present an improper attempt to negate Plaintiff's allegations.  *See Special Situation Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1120 (E.D. Cal. 2017) (finding defendant's "attempt[] to negate the factual allegations" was "inappropriate at the pleading stage"); *Davidson v. Apple, Inc.*, 2018 WL 2325426, at *20 (N.D. Cal. May 8, 2018) (same).

Besides, it "should be obvious that a possible alternative explanation does not destroy the plausibility of [Plaintiff's] claims." *Hough v. Big Heart Pet Brands, Inc.*, 2020 WL 7227198, at *4 (N.D. Cal. Dec. 8, 2020).  Indeed, the Ninth Circuit has determined that "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).  Plaintiffs' complaint may only be dismissed when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible.  The standard at this stage of the litigation is not

2

that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The reason for this standard is straightforward: requiring a theory "to be perfect by eliminating all innocent alternative explanations would contravene the holding in *Twombly*." *United States v. Mariner Health Care, Inc.*, 2021 WL 4259907 (N.D. Cal. Aug. 5, 2021) (citations omitted); *see also In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 960 (N.D. Cal. 2021) (holding that "plaintiffs' theory is more than plausible even if defendant's alternative theories ultimately may be more convincing to the jury" and that "[Defendant's] alternative explanations would require [the Court] to accept the gloss that [Defendant] attempts to put on plaintiff's allegations and the documents on which they rely.  That is not appropriate at this juncture.").

Defendant is on even worse footing here because it does not bother to develop alternative explanations.  Instead, Defendant prays that the Court invert the pleading standard to draw inferences in *its* favor.  *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 (9th Cir. 2018) (citations omitted) ("We must accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiffs' favor for the purposes of evaluating a motion to dismiss[.]").  Besides, "[i]t is not the Court's duty to make Defendant's . . . argument for them." *See Wright v. Old Gringo Inc.*, 2018 WL 6788215, at *3 (S.D. Cal. Dec. 26, 2018) (Bashant, J.).

Worse, Defendant, through the guise of a Rule 12(b)(1) challenge, seeks to mine Plaintiffs' references for every reasonably conveyed scientific determination, in hopes that all references to "may" may topple Plaintiffs' well-pleaded allegations.[2]  In doing so, Defendant asks this Court to impermissibly "resolve genuinely disputed facts

---

[2] Defendant's analysis relies on documents attached to its Request for Judicial Notice, Exhibits 1-11.  Defendant uses *its* interpretation of those documents extensively throughout its Motion in an attempt to negate Plaintiffs' allegations and to resolve factual disputes in its favor.  However, as this Court has determined, "it is improper to assume the truth of an incorporated document, if such assumptions only serve to dispute facts stated in a well-pleaded complaint.'" *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1121 (S.D. Cal. 2021) (Anello, J.) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)).

where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Stewart*, 537 F. Supp. 3d at 1123 (Anello J.) (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).  But, as this Court has determined, "[w]hen there is an <u>entanglement</u>, determination of the jurisdictional issue should be determined 'either on a motion going to the merits or at trial.'" *Id.* (quoting *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983)) (emphasis added).  Accordingly, such questions should be reserved for a later stage when the parties will have the benefit of a developed record and expert reports.  Should the Court consider these merits-based questions at this stage, Plaintiffs stand by their allegations as summarized by Dr. Linda S. Birnbaum, Scholar in Residence at Duke University, Scientist Emeritus and Former Director of the National Institute of Environmental Health Sciences (NIEH) and National Toxicology Program: "[t]hese toxic chemicals are linked to serious health problems like cancer, liver damage, decreased fertility, and asthma . . . . PFAS can [also] weaken our immune system, making us more vulnerable to infectious diseases like COVID-19.'" FAC, ¶ 91.

The threats presented by PFAS are material to reasonable, health-conscious consumers.  Those consumers, like Plaintiffs, who shop at Defendant's restaurants believe they are doing right by their bodies; that they are eating healthy; and that Defendant has sought out to help them in their journey.  But as Toxic-Free Future asks in the following image: "Think you're eating healthy?  Think again." *Id.*, ¶ 47.



*See id.*  Defendant's attempt to gloss over that reality should be rejected out of hand.

As should Defendant's argument that Plaintiffs must have tested the very products they purchased and discarded well in advance of litigation.  That argument

4

has been roundly rejected by the courts, as described more fully below.  *See infra* §
II(A)(2)(a).  Likewise, this Court should disregard Defendant's argument that PFAS
did not migrate from those very product's packaging onto the food Plaintiffs may have
consumed.  *See infra* II(A)(2)(b).   After all, Plaintiffs, again, devote an entire section
to addressing that concern, entitled "PFAS Migrates From Food Packaging to Food."
*See id.*, ¶¶ 69-76.   Plaintiffs point to "a consensus statement" by several named
scientists who write that "[w]e describe areas of certainty, like the fact that chemicals
migrate from food contact articles into food." *Id.*, ¶ 70.  Those scientists concluded
that "[t]here is clear scientific evidence that chemicals migrate from food contact
artifacts[.]" *Id.*, ¶ 76.  Plaintiffs cite to other experts who agree. *See id.*, ¶ 76, n. 36.

On the whole, at this stage it is premature to conclude as Defendant has, that
PFAS are not problematic.  *See City of Pomona v. SMQ N. Am. Corp.*, 750 F.3d 1036,
1049 (9th Cir. 2014) ("A factual dispute is best settled by a battle of the experts before
the fact finder, not by judicial fiat."); *accord Fulfillium v. ReShape Med. LLC*, 2019
WL 4570037, at *8-9 (C.D. Cal. Aug. 21, 2019).  As is the degree to which reasonable,
health-conscious consumers have been misled.  *See Stewart*, 537 F. Supp. 3d at 1151
(Anello, J.) ("[T]he question of reliance and how the term healthy will be understood
is a question of fact 'ill-suited for resolution on a motion to dismiss.'"); *accord
Morgan v. Wallaby Yogurt Co., Inc.*, 2014 WL 1017879, at *9 (N.D. Cal. Mar. 13,
2014) (holding that what "health-conscious consumers" believe should be reserved for
a developed record). !

## II.    ARGUMENTS

### A.    Plaintiffs Have Article III Standing

#### 1.    Plaintiffs Establish Economic Injury-In-Fact

The crux of Defendant's standing challenge—which is saturated with issues
testing the merits of Plaintiffs' allegations—is that Plaintiffs "do not plausibly allege
a concrete and particularized injury-in-fact."  MTD at 7.  That argument is wrong for
four reasons.

First, Plaintiffs allege that they purchased Defendant's Products based on three representations: "including that the Products were healthy, safe, and sustainable." FAC, ¶¶ 20, 22.   Noticeably, Defendant fails to address Plaintiffs' allegations pertaining to healthiness and sustainability, foreclosing the ability to do so in reply. *See Cross v. HFLP-Dolphin Beach, LLC*, 2017 WL 2794339, at *11 (S.D. Cal. June 28, 2017) (Anello, J.) ("As discussed above, it is inappropriate for parties to raise new legal arguments in their reply briefs[.]").   Thus, Defendant's argument must fail.

Second, Defendant's argument conflates the question of whether Plaintiff has standing with the question of whether Plaintiffs' claims have merit and should thus be rejected.   *See Zeiger v. WellPet*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) ("Defendant argues that plaintiffs cannot show any cognizable injury, because they cannot establish that defendant's Products contain unsafe amounts of arsenic, lead, or BPA.   Defendant's arguments largely go to the merits of plaintiff's claims, and not their standing to bring those claims."); *Kanan v. Thinx Inc.*, 2021 WL 4464200, at *6 (C.D. Cal. June 23, 2021) (Selna, J.) ("Thinx's argument about the accuracy of the alleged testing and the causation versus correlation issue are inappropriate at the motion to dismiss stage.   The Court finds that Plaintiffs have alleged a[n economic injury] that constitutes an injury in fact for purposes of Article III standing.").

Third, Defendant relies principally on Third Circuit case law as expressed in *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 280-81 (3d Cr. 2018).   *See* MTD at 7.   However, Defendant fails to provide any justification as to why this Court should adopt that holding in the face of on-point Ninth Circuit decisions.   And Defendant cannot simply rely on this Court to supply that argument.[3]   With or without such an argument, however, Ninth Circuit precedent is controlling.   *United States v. Martinez*, 967 F.2d 1343, 1347 (9th Cir. 1992) ("[W]e are obliged to follow the law of our circuit over inconsistent law from other circuits.").

---

[3] *See Wright*, 2018 WL 6788215, at *3 (S.D. Cal. Dec. 26, 2018) (Bashant, J.).

And both the Ninth Circuit and this Court have repeatedly reaffirmed that economic injury satisfies Article III's injury-in-fact requirement.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012)) ('There is no difficulty in this case regarding Article III injury in fact . . . . We have explained that when, as here, 'Plaintiffs contend that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact."); *see also Zemola v. Carrington Tea Co.*, LLC, 2017 WL 4922974, at *6 (S.D. Cal. Oct. 30, 2017) (Anello, J.) (citations omitted) (same).

The Ninth Circuit doubled down on that determination in its recent holding in *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 08 (9th Cir. 2020).  There, the court held that "[w]e agree with McGee that, '[u]nder the benefit of the bargain theory, a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value.'" *McGee*, 982 F.3d at 705.  The Ninth Circuit also determined "[w]e have consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to defendant's false representations about the product." *Id.* at 706.

In analyzing the impact of *McGee*, Judge Robinson determined that the *McGee* plaintiffs' claims failed because "the plaintiffs failed to allege a misrepresentation that they relied on when purchasing the product." *Souter v. Edgewell Pers. Care Co.*, 2022 WL 485000, at *5 (S.D. Cal. Feb. 16, 2022).  Here, by contrast, Plaintiffs allege in no uncertain terms that "[p]rior to [their] purchases, [Plaintiffs] reviewed Defendant's marketing materials and in-store signage related to [their] Products, including those set out herein, including that the Products were healthy, safe, and sustainable."  FAC, ¶¶ 20, 22.  Plaintiffs then proceed to outline those representations, including pictures of Defendant's website, in-store signage, and even pictures of the misleading text on Defendant's menus. *See id.*, ¶¶ 34-38.  And though Defendant repeatedly challenges

the adequacy of Plaintiffs' stated reliance, this Court squarely rejects such attempts. *See Stewart*, 537 F. Supp. 3d 1103 at 1150 ("Plaintiffs supply a screenshot describing Defendant's Double Chocolate Muffin Mix from the online store . . . . Thus, Stewart plausibly alleges that he relied upon Defendant's online advertising . . . . Whether Stewart did indeed rely upon Defendant's online advertising is not an appropriate inquiry at this stage."). Plaintiffs then allege that they "understood that based on Defendant's claims, that [the] Products were safe for consumption, and otherwise a sustainable product" and that they "reasonably relied on these representations and warranties in deciding to purchase the Products, and these representations and warranties were part of the basis of the bargain in that [they] would not have purchased the Products, or would not have purchased them on the same terms, if the true facts had been known." *See id.*, ¶¶ 20, 22.

Fourth, these allegations of economic injury are sufficient to confer Article III standing in line with analogous contamination cases. *See Kochar v. Walmart, Inc.*, 3:21-cv-02343-JD, ECF No. 51, p. 1 (N.D. Cal. Apr. 25, 2022) ("Named plaintiffs have Article III standing to sue because they plausibly alleged the economic injury in paying a premium for [a product] advertised as healthy when it is said to have excessive levels of non-naturally occurring heavy metals.").[4]

---

[4] *Accord In re Plumb Baby Food Litigation*, Case No. 4:21-cv-913-YGR (N.D. Cal. Jan. 12, 2022), Dkt. No. 125, p. 1 ("The Court finds that plaintiffs have adequately alleged an injury in fact be alleging that 'they would not have paid [the purchase or the premium price] had they known that the [products] included levels of Heavy Metals, perchlorate, and/or undesirable toxins or contaminants.'"); *Zeiger*, 304 F. Supp. 3d at 846 (N.D. Cal. 2018 (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)) ("A 'quintessential injury-in-fact' occurs when plaintiffs allege that they 'spent money that, absent defendants' actions, they would not have spent.'"); *Berke v. Whole Foods Mkt., Inc.*, 2020 WL 5802370, at *7 (C.D. Cal. Sept. 18, 2020) (finding an injury in fact where plaintiff alleged that "he purchased an paid a premium for Starkey Water and had he known the truth [that the water contained arsenic] he would not have purchased Starkey Water or paid a premium for it") *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *5 (C.D. Cal. Jan. 27, 2017) (finding an injury in fact where "Plaintiff parted with money to purchase subject vegetables" that "turned out to be adulterated and not fit for sale or human consumption" and where the plaintiff 'suffered an economic loss that he would not have otherwise suffered had [defendant's] representations on the packaging accurately reflected the risks associated with consuming their contents"); *In re Morning Song Bird Food Litigation*, Case No. 3:12-cv-01592-JAH-AGS (S.D. Cal. Sept. 30, 2013), Dkt. 44, p. 6 (determining that "[t]he

It follows that a favorable decision requiring Defendant to compensate Plaintiffs for their injuries and further requiring Defendant to correct the practices described herein would redress Plaintiffs' injuries.  As such, Plaintiffs have suffered an injury in fact in the form of economic damages stemming from their overpayment of a Product they believed was safe, healthy, and sustainable based on Defendant's misrepresentations and omissions.  Defendant's remaining "standing" arguments, resting on a conflation of the merits, should also be rejected.

### 2.     Plaintiffs Need Not Test Products (But They Have)

#### a.     Plaintiffs Pinpoint Nine Separate Test Results Validly Demonstrating PFAS

Couched as a standing challenge, Defendant argues that "the FAC does not allege that the packaging of Plaintiffs' own meals, let alone the food they consumed, contained a molecule of any form of PFAS" and consequently, "Plaintiffs received what they bargained for[.]" MTD at 8.  That is wrong for five reasons.

First, Defendant fails to offer a single on-point citation, opting instead for tangentially related holdings, the analogousness of which collapse upon examination. For example, Defendant cites to *Meaunrit v. Pinnacle Grp., LLC*, along with an oblique citation that does not accurately reflect the holding in that case.  *See* MTD at 8 (citing 2010 WL 1838715, at *2-3 (N.D. Cal. May 5, 2010)).  According to the *Meaunrit* court, the plaintiff there simply "cit[ed] underlined 'recent reports'" pertaining to bacteria contamination.  *See* 2010 WL 1838715, at *1 (emphasis added).  The gravamen of those plaintiffs' claims was that unless they cooked their food at a certain temperature, which they may not know to do (despite instructions), they may contract salmonella.  *See id.* at *2.  Here, Plaintiffs cite several named sources that conducted tests on Defendant's products, including identical products purchased by Plaintiffs. *See* FAC, ¶¶ 6-13.  Those tests were conducted by Mind the Store and Toxic-Free

_____

Court finds Plaintiffs sufficiently allege an injury in fact to support standing" where "Plaintiffs allege they . . . spent money to purchase the bird food which was worthless because it was [contaminated with pesticides and] was not fit for consumption by birds.").

9

Future, Consumer Reports, and Plaintiffs' counsel at Galbraith Laboratories, and were "conducted across more than two years and across geography." *Id.*, ¶ 13. Despite those test and Defendant's receipt of that knowledge, Defendant still markets its products as safe, healthy, and sustainable." *Id.*, ¶ 16.[5]

Second, Defendant's argument that Plaintiffs must have performed testing themselves, let alone on the very same products they purchased well in advance of litigation, has been roundly rejected by courts in this Circuit. *See Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *7 (N.D. Cal. Mar. 16, 2020) (quoting *Lujan v. Defs' of Wildlife*, 504 U.S. 555, 561 (1992)) ("Big Heart . . . argue[s] that plaintiffs are required to link the independent testing (that allegedly confirms that the representations on Nature's Recipe Food are false) to the Nature's Recipe Food products they purchased . . . . That argument is not persuasive . . . . In assessing standing on a motion to dismiss, the court must 'presume that [] general allegations,' like the ones alleged here, 'embrace those specific facts that are necessary to support the claim.'").[6]

---

[5] Defendant's other citations are just as flimsy. In *Akridge v. Whole Foods Mkt. Grp., Inc.*, the plaintiff merely stated that he generally "purchased Products of the type which have been identified" as subject to recalls over a period of years due to an undisclosed allergen. 2022 WL 955945, at *2 (S.D.N.Y. Mar. 30, 2022). The court determined that "[t]he FAC does not define 'Products.'" *Id.* Nor did the FAC "state which allergen(s) Akridge is allergic to or otherwise seeks to avoid." *Id.* Accordingly, there was no way for the court to determine whether one of the products he purchased was subject to the recall, and whether such a product contained an allergen that the plaintiff may have been harmed by. *Id.* at *3. Here, by contrast, Plaintiffs specifically list the types of products—"Defendant's grain and salad bowls"—and cite to consistent testing spanning geography and time, including testing commissioned by Plaintiffs' counsel, all of which tested for a very specific, and widely recognized substance: organic fluorine. *See* FAC, ¶¶ 6-13. Perhaps the weakest of all, *Renfro v. Champion Petfoods USA, Inc.*, "Plaintiffs lacked standing . . . because they did not allege the dog food they purchased from Champion contained any pentobarbital contamination. Because Plaintiffs had purchased all the dog food before Champion received shipments of allegedly contaminated ingredients[.]" 25 F.4th 1293, 1300 (10th Cir. 2022). The comparison to *In Re Metformin Mktg. & Sales Pracs. Litig.*, and *Schloegel v. Edgewell Personal Care Co.*, fail because those decisions based on Third Circuit and Eighth Circuit precedent do not accurately the laws of the Ninth Circuit, as discussed above. 2022 WL 970281 (D.N.J. Mar. 30, 2022); 2022 WL 808694 (W.D. Mo. 16, 2022).

[6] *Accord Hough*, 2020 WL 7227198, at *2; *Berke*, 2020 WL 5802370, at *7 ("Defendant argues that because there is no allegation as to how much arsenic was in

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Third, Defendant's argument has also been rejected by out-of-Circuit courts, including, *Kimca v. Sprout Foods, Inc.*, a case Defendant relies on in its briefing. 2022 WL 1213488, at *4 (D.N.J. Apr. 25, 2022) ("[P]laintiffs can establish standing using representative testing[.]") (citations omitted).[7]

Fourth, some courts have even determined that no testing at all is required by the plaintiff or a third party to assert analogous claims. *See, e.g., Fine v. ConAgra Foods, Inc.*, 2010 WL 11595914, at *1 (C.D. Cal. June 29, 2010) ("While Plaintiff herself does not have direct knowledge of the presence of diacetyl in Defendant's products . . . At this stage of the litigation, the Court must view all material allegations in the Complaint as true and thus accepts Plaintiff's contention[.]").

Fifth, and nonetheless, Plaintiffs have commissioned their own test results, which were conducted by Galbraith Laboratories, an internationally renowned laboratory. FAC, ¶¶ 12, 61. That testing not only confirmed past testing for a combined total of nine separate tests showing inordinately high amounts of organic fluorine, supporting intentional use of PFAS, but also showed that the Products contained higher amounts than previously detected. Whereas Mind the Store and Toxic Free Future found 660ppm and 945ppm in Defendant's Products, and Consumer Reports found 548ppm, 508.3ppm, 280ppm, 260ppm, and 202ppm in Defendant's Products, Galbraith Laboratories found 1147ppm and 1044ppm in Defendant's

---

the Starkey Water that Plaintiff himself bought, his alleged injury is speculative . . . . The Court disagrees.").

[7] *See generally, Barnes v. Unilever United States Inc.*, 2022 WL 2915629, at *1 (N.D. Ill. July 24, 2022) (denying motion to dismiss challenging claims raised by plaintiffs who alleged that third-party testing showed that products contained benzene) *see also Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 202 (W.D.N.Y. 2020) ("Defendant argues that because no testing was performed on plaintiff's own power bank and because plaintiff's claim injury relied on speculative extrapolation of a single set of test results, plaintiff has failed to allege a plausibly injury in fact . . . At the pleading stage, however, more specific allegations are not necessary for Article III standing."). *Barton v. Pret A Manger (USA) Limited*, 535 F. Supp. 3d 225 (S.D.N.Y. 2021) ("Defendant invites the Court to disregard another fundamental principal by asking the Court to discredit Plaintiff's allegations regarding the GMO content of Defendant's products in the absence of testing . . . . [But] [t]his is a fact that the court is required to accept in the context of this motion to dismiss.").

Products.  *See* FAC, ¶¶ 48-49, 60-61.  According to Judge Epstein, in addition to the experts, professors, and trade organizations Plaintiffs pinpoint in their FAC, those tests represent a valid measure for determining the existence of PFAS in Defendant's Products.  *See GMO Free USA v. Coty Inc., et al.*, Case No. 2021 CA 004786 (D.C. Super. June 1, 2022) ("[Plaintiff] plausibly alleges that the product contains PFAS based on its fluorine testing."); FAC, ¶¶ 62-68.

Sensing that overwhelming authority, Defendant then argues that "the testing allegations [Plaintiffs provide] provide no basis to conclude that Plaintiffs' purchases contained PFAS[.]"  MTD at 9.  Defendant's argument flies in the face of U.S. Supreme Court precedent as reflected in this Court's holding that "[b]ecause this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the FAC."  *Safransky v. Fossil Grp., Inc.*, 2018 WL 1726620, at *1 (S.D. Cal. Apr. 9, 2018) (citing *Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976)).  Defendant then proceeds to enumerate what it perceives as requirements for scientifically valid testing, *see* MTD at 9, even though "argument[s] about the accuracy of the alleged testing . . . are inappropriate at the motion to dismiss stage."  *Kanan*, 2021 WL 4464200, at *6 (Selna, J.).  And, in support of its argument, Defendant again relies almost entirely on out-of-Circuit cases that have no support in Ninth Circuit precedent.  And the single intra-Circuit case Defendant does cite, Defendant mischaracterizes.  *See* MTD at 9 (citing *Andrews v. Procter & Gamble Co.*, 2019 WL 6520045, at *3 (C.D. Cal. June 3, 2019)).[8]

Plaintiffs have no obligation to prove which PFAS are in Defendant's Products.  *See Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at 87 (S.D. Cal. Oct. 9, 2015) (Anello, J.) ("Defendant urges the Court to disregard this 'expert evidence' . . . . However, the Court finds this argument premature, as Plaintiff need not *prove* his

---

[8] In *Andrews*, the plaintiff's claims failed because the court found that the plaintiff had misstated the findings of the PFAS study at issue.  *See Andrews*, 2019 WL 6520045, at *3.  Here, Plaintiffs consistently allege that the Products have "unsafe levels of organic fluorine which is indicative of cancer causing PFAS in its packaging," and point to numerous authorities in support.  *See* FAC, ¶¶ 44; 62-68.

claims at the motion to dismiss stage.").  That would require an enormous pre-discovery investment and only serve to heighten the pleading standard without any basis in Ninth Circuit or California precedent.  Indeed, even Defendant acknowledges that PFAS "are an extremely broad chemical category."  MTD at 3.  Rule 9(b) does not compel that outcome and only requires that Plaintiffs provide notice to Defendant. Defendant is on notice of Plaintiffs' claims.  That purpose has been served.

### b.     PFAS Migrate From Food Packaging to Food

Defendant argues, almost as an aside, that "even if Plaintiffs had alleged that their packaging actually contained a form of PFAS, they do not allege that it migrated into their food[.]"  MTD at 10.  That is also wrong.  Plaintiffs devote an entire section of their FAC to this point entitled "PFAS Migrates From Food Packaging to Food." FAC, ¶¶ 69-76.  Plaintiffs point to a "consensus statement" by leading scientists that "[w]e describe areas of certainty, like the fact that chemicals migrate from food contact articles into food."  *Id.*, ¶ 70.  The scientists concluded that "'[t]here is clear scientific evidence that chemicals migrate from food contact artifacts[.]'"  FAC, ¶ 76.  By contrast, Defendant points to not a single authority to the contrary.  In all, Defendant's unsupported argument should be rejected as unsupported and counter to Plaintiffs' well-pleaded allegations.  *See Safransky,* 2018 WL 1726620, at *1.

### 3.     PFAS Share Similarities Rendering Them Material

Defendant contends that "[t]here is simply no basis in the FAC to conclude that [Plaintiffs'] purchases contained one of the forms of PFAS belonging to the subset regarded as potentially risky."  MTD at 10.  Not only is Defendant's argument at odds with Plaintiffs' well-pleaded allegations, but it is also wrong.  Plaintiffs devote an entire section to this question: "PFAS Are Incompatible With Human Health."  *See* FAC, ¶¶ 77-103.  Plaintiffs quote numerous scientists, professors, and national and international agencies, all demonstrating that PFAS are problematic to human health and the environment.  Plaintiffs quote leading scientists who write that "PFAS do share one common structural feature that make them highly problematic, namely the

13

presence of perfluoroalkyl moieties, resulting in their shared resistance to environmental and metabolic degradation." *Id.*, ¶ 85.  These experts do not mince words: "Primary among [the 'serious health concerns'] are cancer and effects on lipid metabolism, but they also include immune suppression, thyroid disease, and harm to reproduction.'" *Id.*, ¶ 87.  As Dr. Birnbaum concluded, "'[t]hese toxic chemicals are linked to serious health problems like cancer, liver damage, decreased fertility, and asthma . . . . PFAS can [also] weaken our immune system, making us more vulnerable to infectious diseases like COVID-19.'" *Id.*, ¶ 91.

### 4.    Plaintiffs Need Not Allege A Threshold

Defendant argues that Plaintiffs "have[ not] alleged personally receiving in *amounts* capable to risk, let alone cause, injury or disease."  MTD at 11 (emphasis in original).  That is wrong.  In support of that position, Defendant relies entirely on inapposite out-of-Circuit cases and their progeny that are distinguishable on their face given that the FDA had specifically determined the levels in the products were safe.[9] That is not an issue here.  As for Defendant's remaining argument that "Plaintiffs cannot avoid conceding that trivial exposures are legally meaningless," MTD at 12, Defendant improperly assumes that the exposure is trivial, despite Plaintiffs' well-pleaded allegations that "[b]ecause PFAS persist and accumulate over time, they are harmful even at very low levels," and that consequently, Defendant's Products "are unsafe, unhealthy, [and] harmful to the environment . . . and should otherwise be approached with caution."  FAC, ¶¶ 13, 18.  As this Court has determined, "the Court must accept as true the allegations set forth in the FAC."  *Safransky*, 2018 WL 1726620, at 1, n.1 (citing *Hosp. Bldg. Co.*, 425 U.S. at 740 (1976)).  Besides, Defendant fails to point to a single on point intra-Circuit authority for that proposition.

---

[9] *See In re Fruit Juice Prods. Mktg. & Sales Practices Litig.,* 831 F. Supp. 2d 507, 510-511 (D. Mass. 2011) ("the FDA concluded"); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *4 (N.D. Cal. July 19, 2012) ("the FDA had found"); *Herrington v. Johnson & Johnson Consumer Cos.* 2010 WL 3448531, at *3, n. 2 (N.D. Cal. Sept. 1, 2010) ("the U.S. Food and Drug Administration (FDA) stated[.]"); *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *7 (D.N.J. Apr. 25, 2022) ("the FDA stated[.]").

14

### 5.    Plaintiffs' Allegations Align With Ninth Circuit Precedent

Defendant's remaining subheading on the question of Article III standing is merely the same arguments supported by many of the same sources that were considered and rejected above. *See* MTD at 12-15. For example, Defendant argues that Plaintiffs' stated injury is "conjectural or hypothetical." *See* MTD at 12. But that is false as described in the previous section.

As discussed throughout, Defendant cannot freely ignore such allegations or attempt to minimize them. *See* MTD at 12 (implying Plaintiffs' concerns are merely "subjective"). Plaintiffs' claims are well-grounded in the case law. *See supra,* § A(1). Nor can Defendant rely on out-of-Circuit precedent like *Koronthaly v. L'Oreal USA, Inc.*, to manufacture an argument where there is none. *See* MTD at 13 (citing 2008 WL 2938045 (D.N.J. July 2009) (affirmed at 374 Fed. Appx. 257 (3d Cir. 201))).

Moreover, *L'Oreal* is plainly distinguishable. As Judge Chen determined in analyzing that case, "[the] court held that the alleged health defects were speculative, in part because the FDA had approved the product labeling." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 953 (N.D. Cal. 2018) (citing *L'Oreal*, 374 Fed. Appx. At 259). Again, the FDA is not an issue here. Though Defendant repeatedly attempts to raise that inference, Defendant does not argue preemption nor that the PFAS in Defendant's Products are food contact substances nor that such substances were approved by the FDA. Finally, *L'Oreal* does not reflect the law of this Circuit. *Compare L'Oreal*, 374 Fed. Appx. at 259 ("Her lipstick purchases were not made pursuant to a contract, and therefore she could not have been denied the benefit of the bargain.") *with McGee*, 982 F.3d at 705 ("[w]e agree with McGee that, '[u]nder the benefit of the bargain theory, a plaintiff might successfully plead an economic injury[.]" *McGee*, 982 F.3d at 705. Defendant's argument based on inapposite authority should be rejected.

### B.    Plaintiffs Have Standing For Injunctive Relief

Defendant argues that "Plaintiffs lack Article III standing to seek prospective

relief" because they are "now wise to their alleged deception."  MTD at 15.  But that is not how injunctive relief works.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir, 2018)) ("We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm.").

As this Court has recently determined, "an explicitly stated intention or desire to purchase is required to demonstrate a concrete injury for standing to seek injunctive relief at the dismissal stage in the Ninth Circuit."  *Vitiosus v. Alani Nutrition, LLC*, 2022 WL 2441303, at *7 (S.D. Cal. July 5, 2022) (Anello, J.).  This Court also determined that "Plaintiffs must [also] plausibly allege that they will be deceived again."  *Id.*  That is exactly what Plaintiffs have alleged: "[Plaintiffs] continue[] to desire to purchase the Products from Defendant.  However, [Plaintiffs] [are] unable to determine if the Products are actually healthy, safe, and sustainable . . . . as long as Defendant continues to market its products as 'healthy' and 'sustainable,' [Plaintiffs] will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitor's Products."  FAC, ¶¶ 21, 23.  Unlike the Plaintiffs in *Vitiosus*, there is no way for Plaintiffs to realistically determine if Defendant changes practices.

In this way, Plaintiffs' allegations for injunctive relief are supported by the case law in the Ninth Circuit.  *See Williams v. Progressive Cnty. Mut. Ins. Co.*, 2020 WL 7078888, at *4 (S.D. Cal. Dec. 3, 2020) ("Therefore, Plaintiff faces the uncertainty . . . . Accordingly, Plaintiff has sufficient standing to bring an injunctive relief class.").[10]  Thus, Plaintiffs have Article III standing to sue for injunctive relief.

[10] *Hall v. Marriott Int'l, Inc.*, 2020 WL 4727069, at *6 (S.D. Cal. Aug. 14, 2020) (same); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2021 WL 3524047, at *5 (N.D. Cal. Aug. 6, 2021) (same); *Roper v. Big Heart Pet Brands,*

1

### C.     Reasonable, Health-Conscious Consumers Are Deceived

Defendant argues that Plaintiffs' FAC should be dismissed because they "plead no plausible basis for Plaintiffs to" believe that their Products have "no chance of containing any detectable traces of PFAS[.]"  MTD at 15.

First, Defendant constructs a strawman that the PFAS in Defendant's Products are "trace" contrary to Plaintiffs' well-pleaded allegations.  *See Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1029 (C.D. Cal. 2020) (quoting Merriam-Webster.com) ("[A] 'trace' amount indicates a 'minute and often barely detectable amount.'").  Nothing in Plaintiffs' FAC supports that notion.  In fact, Plaintiffs point to nine separate tests demonstrating that Defendant's Products have anywhere from two to nearly 12 times the amount indicating intentional usage.  *See* FAC, ¶¶ 48-49, 60-61.  This is not a "minute" or "barely detectable amount."

Second, though Defendant feigns for the purposes of its briefing that the presence of PFAS is immaterial to reasonable, health-conscious consumers, that, again, is in disregard of Plaintiffs' allegations and Defendant's actions following publicity that it used intentionally added PFAS.  Plaintiffs devote an entire section to this question called "Food and Consumer Preferences."  *See id.*, ¶¶ 28-44.  Plaintiffs allege that "[a]ccording to a recent survey, chemicals in food (including carcinogens or cancer-causing chemicals) [like PFAS] represent[] the most important food safety issue to consumers"; that 70 percent of consumers "said they prioritize . . . products free of certain toxic chemical";  that 82 percent "of consumers agree[] that 'it is important for brands to balance safety and concern for the environment when designing product packaging"; that "[t]he majority of shoppers . . . are willing to spend more for a product they know is safer"; and that "nearly two-thirds (64 percent) of Americans are willing to pay more for sustainable products."  *See id.*, ¶¶ 28-32.

*Inc.*, 510 F. Supp. 3d 903, 916 (E.D. Cal. 2020) (same); *Sharpe v. GT's Living Foods, LLC*, 2021 WL 1035119, at *3 (C.D. Cal. Feb. 1, 2021) (same); *Schwartz v. Bai Brands, LLC*, 2020 WL 5875019, at *8 (C.D. Cal. July 31, 2020) (same).

17

Plaintiffs allege that "[t]hus, there is enormous incentive for . . . Defendant to market their products as safe, healthy, and sustainable.   Indeed, Defendant has repeatedly and pervasively touted these considerations as reasons to purchase the Product over competitors, creating a context for consumers to believe that the Products are indeed safe, healthy, and sustainable." *Id.*, ¶ 33.   Plaintiffs then point to Defendant's marketing that embodies that message, including website representations, in-store signage, and pictures of Defendant's menu.  Plaintiffs even track down an "in-depth profile of Cava written by Menus of Change, run by the Culinary Institute of America," that "Cava Grill . . . targets health-conscious consumers," selling "diners on transparency, simplicity, and purity."  *Id.*, ¶¶ 34-38; 43.

Going a step further, Plaintiffs pinpoint Defendant's smokescreen published on its website to detract from the negative publicity that befell Defendant's competitors following news that organic fluorine, indicative of PFAS, had been detected in its Products.  *See id.*, ¶¶ 4-10; 50-55; *see also* ¶ 53 ("By receiving the positive credit, Defendant avoided the consumer backlash endured by restaurants, such as McDonald's, that were found to have high levels of organic fluorine—but none as high as Defendant—and that had not made similar public commitments.").   In that statement, Defendant misled consumers by stating that "we are actively working to ensure our sustainable packaging <u>continues</u> to be responsibly sourced, compostable . . . and now PFAS free."  *Id.*, ¶ 35 (emphasis added).   That is misleading for several reasons.   For one, products with intentionally added PFAS are not "sustainable," "responsibly sourced," or "compostable." *See id.*, ¶ 63.  For two, Defendant uses the word "continues," assuring consumers that it has already happened.  *See id.*, ¶ 5.

Still, Defendant argues that the website could not mislead consumers because on "March 2022 [it announced] that pandemic-related supply chain disruptions frustrated the company's ongoing efforts to 'eliminate added PFAS from packaging." MTD at 17.  But with that statement Defendant has just admitted that it "add[s] PFAS [in its] packaging," again, undermining its "trace" argument.  Worse, Defendant's

18

post-hoc rationalization was only published in a second effort to avoid negative publicity following news from Consumer Reports that its Products had, once again, tested for high levels of organic fluorine.  *See* Def's RJN, Ex. 1 ("In response to questions from CR . . . CAVA said that supply chains had slowed its 'transition to eliminating added PFAS.'").  It is no coincidence that Defendant made its statement the same month Consumer Reports released their article.

Defendant has profited enormously from its "healthy" and "sustainable" marketing practices.  It cannot now say those were meaningless "characterizations." Besides, under Ninth Circuit precedent "even statements that 'might be innocuous puffery or mere statements of opinion standing alone may be actionable as an integral part of a representation of a material fact when used to emphasize and induce reliance upon such a representation.'"  *Coffelt*, 2017 WL 10543343, at *7 (quoting *Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989) (determining that "the FAC plausibly alleges that 'Quality Guaranteed' and 'Packed at the Peak of Freshness' would be understood as specific factual assertions that the subject vegetables were safe to eat.").

Moreover, under the reasonable consumer standard, plaintiffs must show *at trial* that consumers are *likely to be deceived* by the representations.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  California's statutes are not so restrictive as to prohibit only advertising which is literally false.  As the Ninth Circuit makes clear, "[t]he advertising need not be actually false, as long as it is misleading or 'has a capacity, likelihood or tendency to deceive or confuse the public.'"  *Allen v. Similasan Corp.*, 2013 WL 2120825, at *5 (S.D. Cal. May 14, 2013) (quoting *Williams*, 552 F.3d at 938) (Moskowitz, J.); *see also Chavez v. Blue Sky Nat. Beverages Co.*, 340 F. App'x 359, 360 (9th Cir. 2009) ("[T]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or substantive merits of the plaintiff's case.").  As in *In re Plum*, which involved "trace amounts of heavy metals," whether contamination is "material to a reasonable consumer . . . [is a] factual issue[] not appropriate for resolution at this stage."  4:21-cv-913-YGR (N.D. Cal. Jan. 12, 2022),

19

Dkt. No. 125, p. 2 (emphasis added).  Here, as discussed, Plaintiffs allegations involve much more than mere "trace" amounts.

Yet, Defendant argues that "Plaintiffs say they expect PFAS practically everywhere, but not in food packaging."  MTD at 19.  That is false.  Defendant's argument rests on the fallacy of division as it assumes that because PFAS exist in the environment they must necessarily exist in Defendant's Products.  But Plaintiffs specifically allege that "numerous of Defendant's competitors' products have been tested by researchers and found to contain no level of organic fluorine."  FAC, ¶ 100.  Defendant does not explain in light of its healthy, sustainable, and safe representations why it, and not its competitors, use PFAS.

### D.   Plaintiffs' Allegations Satisfy The Heightened Pleading Standard

Defendant argues in two-fold that Plaintiffs fail to meet Rule 8 and Rule 9(b) because Plaintiffs fail to identify "what chemicals present in their own purchases form the purported basis of liability" and "Plaintiffs fail to allege with particularity that they relied on any of the alleged misrepresentations."  MTD at 22.  Defendant's first argument is merely a reiteration of the arguments raised and rejected above.  *See*, *supra*, § I(A)(2)-(5).  On Defendant's second argument, there can be no doubt that Plaintiffs satisfy Rule 9 and the lower standard of Rule 8, as demonstrated below.

### 1.   The Pleading Standard Is Relaxed For Fraudulent Omission

First, Defendant's Rule 9(b) analysis ignores the fact that Plaintiffs also plead their claims under a separate theory of omission.  *See, e.g.*, FAC, ¶¶ 20, 22 ("As a direct result of Defendant's . . . omissions, [Plaintiffs] suffered and continue[] to suffer, economic injuries.").  As Judge Whelan has determined for such claims, "Plaintiff's failure to specify the time and place of the omission will not bar his claim.  Plaintiff has plead the content of the omission and the injuries resulting from the omission with sufficient particularity under Rule 9(b)."  *Colbath v. Merck & Co.*, 2022 WL 935195, at *7 (S.D. Cal. Mar. 29, 2022) (citations omitted); *see also Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC*, 2018 WL 3222610, at *15 (S.D. Cal. June 19, 2018) ("When

20

a fraudulent omission is at issue, the requirement of Rule 9(b) are relaxed, but not eliminated.").  As shown below, Plaintiffs' claims adequately allege omission.

### 2. Plaintiffs Allege the Who, What, When, Where, and How

Second, Plaintiffs sufficiently identify "the who, what, when, where, and how of the misconduct charged."  *Stewart*, 537 F. Supp. 3d at 1132 (Anello, J.) ("the Court examines the FAC to determine whether Plaintiff plead 'the who, what, when, where, and how' of the misconduct charged.'") (citations omitted).

**Who:**  "Defendant made material misrepresentations and/or omissions of fact about the Product[s] through in-store, website representations, and marketing statements, which include the statements that the Products are healthy, safe and sustainable.  These representations constitute omitted material information regarding harmful chemicals in the Products' packaging which is essential and integral to delivering the Products to the consumer."  FAC, ¶ 119; *see Stewart*, 537 F. Supp. 3d at 1132 ("Plaintiffs allege that the 'who' is Defendant.").

**What:**  "Defendant's conduct here was, and continues to be, fraudulent because they omitted and concealed that the Product[s] contains substances—organic fluorine[,] [and] PFAS . . . that are widely known to have significant health repercussions.  Thus, Defendant's conduct deceived Plaintiffs and Class Members into believing that the Products are healthy, safe, and sustainable, when they are not."  FAC, ¶ 120; *see Stewart*, 537 F. Supp. 3d at 1132 ("As to the marketing claims, the 'what' is that Defendant makes five false or misleading statements on its products[.]").

**When:**  "Defendant made material misrepresentations and/or omissions during the putative class periods, including prior to and at the time Plaintiffs and Class Members purchased the Products, despite its knowledge that the Products packaging contained harmful substances."  FAC, ¶ 121; *see Stewart*, 537 F. Supp. 3d at 1133 ("The 'when' is Plaintiffs' alleged class period[.]").

**Where:**  "Defendant's marketing message was uniform and pervasive, carried through material misrepresentations and/or omissions in in-store, website representations, and marketing statements."  FAC, ¶ 122; *see Stewart*, 537 F. Supp. 3d at 1133 ("The 'where' is Defendant's product packaging and advertising[.]").

21

**How:** "Defendant made material misrepresentations and/or failed to disclose material facts regarding the Product, including the presence of heightened levels of organic fluorine, indicating PFAS[.]" FAC, ¶ 123; *see Stewart*, 537 F. Supp. 3d at 1133 ("Regarding the marketing statements theory, the 'how' is that Defendant misrepresents the naturalness, healthiness, and nutritiousness of its products.").

Nothing more is required. *See Stewart*, 537 F. Supp. 3d at 1134 ("Plaintiffs plead with the requisite specificity that upholds the purpose behind Rule 9(b).").[11]

Nonetheless, Defendant attempts to upend Ninth Circuit authority and the purpose of Rule 9(b), arguing that Plaintiffs must identify each of the precise PFAS in the Products before discovery even begins. *See* MTD at 22. Noticeably, Defendant does not point to a single case that requires such a demanding take on Rule 9(b). That is because there are none for a simple, commonsense reason: because the formulation and manufacturing practices are within the exclusive knowledge of Defendant, only Defendant knows precisely which PFAS are in the Products.

Importantly, the Ninth Circuit has squarely rejected Defendant's oblique attempt to heighten the pleading standard: "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Defendant is on notice of the claims as demonstrated by its detailed exegesis on the merits, as outlined in its Background section. *See* MTD 2-7. Defendant may think that Plaintiffs' claims will fail in front of a jury, but that is a separate question than whether Defendant is on notice. As Judge Selna determined in *Kanan*, 2021 WL 4464200, at *5, another PFAS-related case, such arguments concerning testing methodology is an "argu[ment] predominantly about the merits of Plaintiffs' claims, which is inappropriate at the motion to dismiss stage . . . . [Plaintiffs]

---

[11] Defendant's citation to *Marshall v. Gen. Motors / Corp. Serv. Co.*, 2019 WL 2642661, at *6 (S.D. Cal. June 27, 2019) does not alter that analysis. That case was brought by a *pro se* plaintiff who alleged in a "cursory" manner only that the conduct was done 'fraudulently.'" *See Id.* at 7. Plaintiffs' 55-page complaint, running 274 paragraphs alleging a unified course of fraudulent conduct is not cursory.

are not required to prove that they win on the merits at this stage."  Indeed, "Rule 9(B) demands only a level of detail . . . to demonstrate that a plaintiff is not on a 'fishing expedition.'"  *Id.*  Plaintiffs are not on a fishing expedition when the last court to evaluate organic fluorine testing determined that the plaintiff "plausibly alleges that the product contains PFAS based on its fluorine testing."  *See GMO Free* Order at 4.

### 3.    Reliance Is Inferred Based On Materiality

Third, Plaintiffs satisfy Rule 9(b)'s particularity requirement by alleging that Defendant's misrepresentations and omissions were material.  *See, e.g.*, FAC, ¶¶ 20, 22 ("As a direct result of Defendant's <u>material</u> misrepresentations and omissions, [Plaintiffs] suffered and continue[] to suffer, economic injuries.") (emphasis added).  Such allegations are consistent with Ninth Circuit and California state precedent.[12]

"Accordingly, to have alleged reliance on Defendant's misrepresentation [or omission] of material fact, [a plaintiff] needed only establish it to be plausible that 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in question." *Friedman*, 855 F.3d at 1056 (citations omitted).  That "is generally a question of fact[.]"  *Id.*  Here, Plaintiffs provide allegations demonstrating that Defendant's claims would be material to reasonable, health-conscious consumers, setting out surveys describing purchasing patterns and consumer preferences.  *See* FAC, ¶¶ 28-33.  Plaintiffs then detail PFAS to human health and the environment. *See id.*, ¶¶ 77-98.  Plaintiffs also show that "numerous of Defendant's competitors' products have been tested by researchers and found to contain no levels of organic fluorine.  Accordingly, Defendant would have had knowledge that it could produce the Product packaging without the heightened levels of fluorine and PFAS inherent in its current composition."  *Id.*, ¶ 100.

---

[12] *See Friedman v. AARP, Inc.*, 855 F.3d 1047, 1056 (9th Cir. 2017) ("[A]ctual reliance . . . is inferred from a misrepresentation of a material fact."); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020) (same); *Oxina v. Lands' End, Inc.*, 2015 WL 4272058, at *5 (S.D. Cal. June 19, 2015) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 977 (1997)) (Anello, J.) (same).

These allegations are consistent with cases involving an unexpected safety risk. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 693 (N.D. Cal. 2021) ("[G]iven the admissible evidence of the dangerousness of the accumulation of lead and arsenic, a reasonable consumer could believe the omission of that information was material."); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) ("The alleged unreasonable safety risk . . . is relevant to the materiality of BMW's omissions."). Thus, given the material nature of the misrepresentations and omissions, reliance is inferred, and Plaintiffs have satisfied their burden to plead with particularity under Rule 9(b).

### E.   Plaintiffs Plead Claims For Fraudulent Omission

Defendant argues that Plaintiffs have not adequately alleged a claim for fraudulent omission because Defendant made no statement concerning PFAS, and "faint traces of PFAS . . . are hardly an unreasonable safety hazard." MTD at 24. (emphasis added). Defendant is wrong on both accounts.

First, as noted above, *supra*, § (D)(1), Defendant's analysis fails to account for the pleading standard which is "relaxed" with regards to fraudulent omission. *See Stewart Title*, 2018 WL 3222610, at *15.

Second, Defendant's analysis does not fully encapsulate the realm of fraudulent omission. *See* MTD at 24-25. As the California Court of Appeals has determined, "where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated." *Vega v. Jones Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 292 (2004). That is known as "partial omission," or "partial representations" as opposed to "pure omissions." *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020). And this is exactly what Plaintiffs allege. *Compare* FAC, ¶ 168 ("Defendant made partial representations to Plaintiffs and Class Members, while suppressing the true nature of the Products. Specifically, by displaying the Products and describing the Products as healthy, safe, and sustainable, including on the product packaging, on its website, and in its marketing, without

24

1   disclosing that the Products were unsafe and detrimental to human health and the

2   environment.") *with Coffelt*, 2017 WL 10543343, at *9 ("It is plausible to infer that

3   the statements 'Quality Guaranteed' and 'Packed at the Peak of Freshness' would be

4   misleading to customers without disclosing that 'Freshness' does not necessarily mean

5   clean or sterile or safe to eat."). Thus, Plaintiffs state a claim for partial omission.

6       Third, Defendant's section on this question again resorts to making a strawman

7   of Plaintiffs' claims, suggesting that the PFAS in the Products are "trace." That runs

8   counter to Plaintiffs' well-pleaded allegations as discussed, *supra*, § II(C). Plaintiffs

9   have more than adequately alleged a duty to disclose based on concealment concerning

10  a safety defect in line analogous cases. *See* FAC, ¶¶ 77-98 (outlining health risks);

11  *Zeiger*, 304 F. Supp. 3d at 851-52 (N.D. Cal. 2018). Plaintiffs' claims also survive

12  based on Defendant's knowledge. *See, e.g.*, FAC, ¶ 167 ("Defendant has exclusive

13  knowledge of the Product's composition, which was not known to Plaintiffs or Class

14  members."). In response, Defendant argues that it is "public knowledge" that PFAS

15  are used in packaging. Not so. That argument rests on a distortion of Plaintiffs'

16  allegations. As in *In re Plum*, the Court should reject Defendant's attempt to have the

17  Court make such a finding at this stage in the proceedings. 4:21-cv-913-YGR (N.D.

18  Cal. Jan. 12, 2022), Dkt. No. 125, p. 2 ("Plum would have the Court determine that

19  'consumers know and understand that trace amounts of heavy metals are ubiquitous' .

20  . . . Th[is] [is a] factual issue[] not appropriate for resolution at this stage in the

21  proceedings and [is] plausibly alleged."). Defendant's argument should be rejected.

22  **III.   CONCLUSION**

23      For these reasons, Plaintiffs respectfully request that the Court deny

24  Defendant's Motion, or, grant leave to amend to correct any material deficiencies.

25  *Maddern v. Austin*, 2022 WL 206806, at *2 (S.D. Cal. Jan. 24, 2022) (Anello, J.)

26  (citations omitted) ("[l]eave to amend is to be granted 'extreme liberality.'").

27

28

Dated:  October 24, 2022

**BURSOR & FISHER, P.A**.

By: _ /s/ *Sean L. Litteral* _
      Sean L. Litteral

L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            slitteral@bursor.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn (*pro hac vice* forthcoming)
Alec M. Leslie (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email: jarisohn@bursor.com
            aleslie@bursor.com

*Attorneys for Plaintiffs*

CASE NO. 3:22-CV-00593-MMA-MSB